No. 25-50695

# In the United States Court of Appeals for the Fifth Circuit

RABBI MARA NATHAN, on behalf of herself and on behalf of her minor child, M.N.; et al.,

*Plaintiffs-Appellees*,

*v.*

ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT; et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## DEFENDANTS-APPELLANTS' CORRECTED OPPOSED MOTION FOR INITIAL HEARING EN BANC

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General
William.Peterson@oag.texas.gov

WILLIAM F. COLE
Principal Deputy Solicitor General

DANIEL M. ORTNER
Assistant Solicitor General

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

No. 25-50695

RABBI MARA NATHAN, on behalf of herself and on behalf of her minor child, M.N.; et al.,

*Plaintiffs-Appellees,*

*v.*

ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT; et al.,

*Defendants-Appellants.*

———————————————

Under the fourth sentence of Fifth Circuit Rule 28.2.1, the Defendants-Appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ William R. Peterson
WILLIAM R. PETERSON

*Counsel of Record for Defendants-Appellants*

i

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ...................................................................i

Table of Authorities .......................................................................................iii

Introduction and Rule 40(b) Statement ....................................................... 1

Issues Meriting En Banc Consideration ...................................................... 3

Statement of the Case ..................................................................................... 4

Argument............................................................................................................ 6

    I.   Initial En Banc Review Is Justified in the Light of the Panel's Decision, and Pending En Banc Petition, in *Roake v. Brumley*. ................................... 6

    II.  This Case Presents Exceptionally Important Legal Issues........................... 7

        A.   The district court's order relied on *Roake*'s expansion of offended-observer standing, contrary to this Court's precedent........................ 8

        B.   The district court's Establishment Clause analysis, relying on *Roake*, revives *Lemon*, contrary to Supreme Court and circuit precedent. ...... 9

    III.  Granting Initial En Banc Review Will Assist this Court in Considering These Vital Issues ................................................................................ 13

Conclusion....................................................................................................... 16

Certificate of Conference ............................................................................. 17

Certificate of Service...................................................................................... 17

Certificate of Compliance ............................................................................ 17

# Table of Authorities

**Page(s)**

**Cases:**

*Am. Legion v. Am. Humanists Ass'n,*
    588 U.S. 29 (2019) ...................................................................... 10, 11

*Barber v. Bryant,*
    860 F.3d 345 (5th Cir. 2017) ................................................................ 8

*Doe v. Tangipahoa Par. Sch. Bd.,*
    494 F.3d 494 (5th Cir. 2007) ................................................................ 8

*Firewalker-Fields v. Lee,*
    58 F.4th 104 (4th Cir. 2023) ............................................................... 12

*Freedom from Religion Found, Inc.. v. Mack,*
    49 F.4th 941 (5th Cir. 2022) .............................................................. 10

*Good News Club v. Milford Cent. Sch.,*
    533 U.S. 98 (2001) ......................................................................... 10

*Groff v. DeJoy,*
    600 U.S. 447,460 .......................................................................... 10

*Hilsenrath v. Sch. Dist. of Chathams,*
    136 F.4th 484 (3d Cir. 2025) ............................................................. 12

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ................................................................. *passim*

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,*
    508 U.S. 384 (1993) ........................................................................ 8

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) ................................................................. *passim*

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy,*
    594 U.S. 180 (2021) ....................................................................... 13

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ....................................................................... 13

*NetChoice, L.L.C. v. Paxton,*
    121 F.4th 494 (5th Cir. 2024) ............................................................ 12

*Roake v. Brumley,*
    141 F.4th 614 (5th Cir. 2025) ..................................................... *passim*

*Shurtleff v. Boston,*
    596 U.S. 243 (2022) ....................................................................... 15

*Staley v. Harris County,*
    485 F.3d 305 (5th Cir. 2007) ................................................................9

*Stone v. Graham,*
    449 U.S. 39 (1980) ................................................................... 3, 10

*Town of Greece v. Galloway,*
    572 U.S. 565 (2014)..............................................................10, 11, 15

*United States v. Alcantar,*
    733 F.3d 143 (5th Cir. 2013) ...............................................................7

*United States v. French,*
    121 F.4th 538 (5th Cir. 2024) .............................................................12

*Van Orden v. Perry,*
    545 U.S. 677 (2005) ............................................................................4

*Wash. State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008)...........................................................................12

*Williams v. Catoe,*
    946 F.3d 278 (5th Cir. 2020) ....................................................1, 6, 7

**Statutes and Rules:**

Fed. R. App. P.:
    40(b)(2)(A) ..........................................................................................9
    40(b)(2)(B) ..........................................................................................9
    40(b)(2)(C) ..........................................................................................9
    40(g) ............................................................................................. 1, 7

La. Stat. Ann.:
    § 17:2124(B)(2) ..................................................................................6
    § 17:2124(B)(6)(a)..............................................................................6

Tex. Educ. Code § 1.0041 ...........................................................................4

**Other Authorities:**

Act of May 28, 2025, 89th Leg. R.S., ch. 955, § 1 (" S.B. 10")............................4, 6

## Introduction and Rule 40(b) Statement

This case concerns S.B.10, a Texas law requiring public elementary and secondary schools to post a display with the text of the Ten Commandments in each classroom. Plaintiffs brought a facial challenge to that law, even though not a single one of them has seen a compliant display on a classroom wall. Nevertheless, the district court granted a preliminary injunction in the light of the panel's decision in *Roake v. Brumley*, 141 F.4th 614 (5th Cir.), upholding a preliminary injunction against a substantially similar Louisiana law.

Because *Roake* will figure prominently in the appeal of the district court's order in this case and the appellants in *Roake* have an en banc petition pending before this Court, judicial economy disfavors litigating this substantially similar appeal before another panel. Defendants-Appellants therefore request initial en banc review of this case along with *Roake* pursuant to Federal Rules of Appellate Procedure 40(g) and 27. *See Williams v. Catoe*, 946 F.3d 278, 279 (5th Cir. 2020) (en banc) (approving of "initial en banc hearing as an efficient means of revisiting [an] issue ... without requiring the matter to percolate uselessly through a panel").

En banc review of the district court's order is warranted on two exceptionally important legal issues, also present in *Roake*. *First*, this case raises both standing and ripeness questions regarding the availability of offended-observer standing to bring a facial challenge to a law concerning a hypothetical future display of the Ten Commandments. It also poses the more foundational question of whether the Supreme Court abrogated offender-observer standing when it overruled *Lemon v. Kurtzman*, 403 U.S. 602 (1971).

*Second*, this case raises the vital question of the governing standard for religious-display cases after the Supreme Court overruled *Lemon* and the role that this nation's history and tradition plays in that analysis. By enjoining the enforcement of S.B.10, the court below perpetuated *Lemon*'s ahistorical approach that the Supreme Court has already repudiated. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534-36 (2022).

Initial en banc review alongside *Roake* is particularly justified because this case will sharpen the presentation of the issues in *Roake* and help the Court better evaluate those important issues. The record in this case provides vital testimony regarding the history and use of the Ten Commandments in American education and public life, which demonstrates that displaying the Ten Commandments in the classroom is consistent with this nation's history and tradition and does not "resemble one of the hallmarks of religious establishments" that the Founders forbade, *Id.* at 537. That testimony should form part of the en banc Court's analysis of these issues.

## Issues Meriting En Banc Consideration

**1.** Whether students and parents have standing to bring a facial challenge to a law requiring a Ten Commandments display in public schools where the display has not yet been put up and the full context of the display cannot be evaluated.

**2.** Whether *Stone v. Graham*'s application of the *Lemon* test for religious displays remains controlling law in the light of the Supreme Court's decision to overrule *Lemon*.

## Statement of the Case

On June 20, 2025, Texas Governor Greg Abbott signed into law S.B.10, which requires each elementary and secondary school in Texas to display a poster or framed copy of the Ten Commandments. Act of May 28, 2025, 89th Leg. R.S., ch. 955, § 1 (" S.B. 10") (to be codified at Tex. Educ. Code § 1.0041). The poster must be (1) placed in a "conspicuous place" in the classroom, (2) must be at least 16 inches wide and 20 inches tall, and (3) use font in a "size and typeface that is legible to a person with average vision from anywhere in the classroom." *Id.* § 1(b)(1). The poster must include the identical text of the Ten Commandments featured in the Ten Commandments display at the Texas Capitol that the United States Supreme Court considered and upheld in *Van Orden v. Perry*, 545 U.S. 677 (2005). Tex. S.B. 10 § 1(c). While the poster cannot include any other content, Tex. S.B. 10 § 1(b)(1), the law does not prohibit teachers, schools, or school districts from placing the poster alongside other posters or educational material.

School districts are allowed, but not required, to purchase posters using district funds. *Id.* § 1(e). School districts must also accept privately donated posters that meet the requirements of the law. *Id.* § 1(d). The law goes into effect September 1, 2025. *Id.* § 3.

In his Statement of Intent, S.B.10's author observed that the Ten Commandments has a lengthy history of being "displayed in public buildings and classrooms across America." App.206. The statement further notes that the law is intended to "restore the history and tradition of the Ten Commandments in our state and our nation" and to "remind students all across Texas of the importance of

a fundamental foundation of American and Texas law—the Ten Commandments."
*Id.*

Before the law even went into effect and before a single child had seen a display of the Ten Commandments required by S.B.10, Plaintiffs sued eleven school districts near San Antonio, Austin, Houston, and Dallas, respectively. App.1. Plaintiffs, who are parents and their minor children, argued that S.B.10 violates the Establishment Clause as well as their rights under the Free Exercise Clause of the First Amendment. App.60-63. Plaintiffs filled a motion for preliminary injunction along with their complaint. App.68.

At a two-day preliminary-injunction hearing on August 15 and 18, 2025, both Plaintiffs and Defendants presented expert testimony regarding the history of the usage of the Ten Commandments in education and public life both during and after the Founding era. App.304-507. Defendants' expert Mark David Hall testified regarding the extensive usage of the Ten Commandments in school curricula, including in government subsidized schools and early public schools. App.406-16.

On August 20, 2025, the district court granted Plaintiffs' request for a preliminary injunction. App.211. The court ruled that its decision was controlled by the panel decision in *Roake* and that S.B.10 therefore violates the Establishment Clause. App.253-255. The district court also ruled that S.B.10 violates the Free

Exercise Clause by coercing students to venerate the Ten Commandments.[1] App.262-63.

**ARGUMENT**

**I.    Initial En Banc Review Is Justified in the Light of the Panel's Decision, and Pending En Banc Petition, in *Roake v. Brumley*.**

In the light of the panel decision in *Roake* and that decision's central prominence in the district court's order, judicial economy favors initial en banc review of that order, rather than proceeding before a merits panel. *See Williams*, 946 F.3d at 279. Although there are a few differences in how Texas and Louisiana's law are implemented,[2] these differences are unlikely to affect the resolution of Plaintiffs' Establishment Clause claim on the merits, given that both laws require the identical text of the Ten Commandments to be displayed in classrooms. *Compare* Tex. S.B. 10 § 1(c), *with* La. Stat. Ann. § 17:2124(B)(2).

---

[1] Although the district court in *Roake* reached a similar conclusion as to free exercise, the *Roake* panel did not reach that issue. In the interest of judicial efficiency, Defendants-Appellants ask the en banc court to review the jurisdictional and Establishment Clause issues in this case along with *Roake*. If Defendants-Appellants prevail, then the district court's cursory free-exercise analysis could be reviewed by a regular three-judge panel. Alternatively, the en banc Court could evaluate the free-exercise issue in the first instance and Defendants-Appellants would welcome the opportunity to brief the topic.

[2] For instance, the Louisiana State Board of Elementary and Secondary Education is expressly authorized and instructed to issue regulations to enforce its Ten Commandments law while the Texas Education Agency is not. *See* La. Stat. Ann. § 17:2124(B)(6)(a).

The proceedings in the district court reflect the significance of *Roake*. Before closing arguments, the court directed counsel to focus on the question of "Is [*Roake*], for now, binding on this Court?" App.209. And in its opinion, the district court distilled one of the two central issues in the case to, "[i]s *Roake v. Brumley* binding on this Court?" App.231 (citation omitted). The district court concluded that *Roake* was binding and thus that it "need look no further in its analysis." App.78. *See also* App.83 (arguing that *Roake* controls because the Louisiana and Texas laws are "identical"); App.512 (arguing that it is "quite clear" that *Roake* "remains binding on district courts within the Fifth Circuit").

Judicial economy favors litigating this appeal alongside *Roake* before the en banc Court rather than a three-judge panel. After all, the panel will be bound to apply *Roake* under the rule of orderliness. *See United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013). A traditional appeal would result only in delay and inefficiency.

Although granting initial en banc review is rare, these are the circumstances for which Rule 40(g) exists. *See Williams*, 946 F.3d at 279 (approving of "initial en banc hearing as an efficient means of revisiting [an] issue . . . without requiring the matter to percolate uselessly through a panel"). Accordingly, Defendants-Appellants request initial en banc review of this case along with *Roake*.

## II.  This Case Presents Exceptionally Important Legal Issues.

This case, like *Roake*, presents several important legal issues that merit consideration by the en banc Court. The en banc petition in *Roake* describes the many ways in which the panel decision conflicts with this Court's precedent, lowers the bar for offended-observer lawsuits, and unburies the *Lemon* test that the Supreme

Court "killed and buried" just a few years ago, *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398-99 (1993). These issues concern core questions involving the interaction of public education with this nation's religious history and traditions. They warrant en banc review.[3]

## A. The district court's order relied on *Roake*'s expansion of offended-observer standing, contrary to this Court's precedent.

This Court has repeatedly emphasized that in Establishment Clause cases, standing arises only when a plaintiff was "exposed to, and may thus claim to have been injured by," a challenged religious display or exercise. *Barber v. Bryant*, 860 F.3d 345, 354 (5th Cir. 2017) (quoting *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 497 (5th Cir. 2007) (en banc)). This requires an actual "encounter with the offending item." *Id.* at 353. But the *Roake* panel did not require an actual encounter, instead concluding that it was enough for a plaintiff to allege that he "certainly will experience [] unwanted exposure to government-sponsored religious displays or exercises in the course of his regular activities." 141 F.4th at 635.

The district court's order here relied on *Roake*'s expansion of offended-observer standing to authorize Plaintiffs' lawsuit challenging Ten Commandments displays that Plaintiffs have never encountered and might never encounter. *See* App.238 (rejecting the State's arguments for dismissal for "the reasons set forth in *Brumley*"); App.255 ("Plaintiffs affirm in their declarations that they will suffer

---

[3] Because the pending petition for review in *Roake* thoroughly discusses the importance of the legal issues, Petitioners address the merits only to show that the same issues are present in this appeal.

personal spiritual offense as a result of the posting of the Ten Commandments mandated by S.B.10."). Plaintiffs could not show that any Defendant school district either allocated funds for a display or received a donated display. Nor could Plaintiffs show that any Defendant had determined how any Ten Commandments posters would be displayed in an actual classroom, including whether the poster would be displayed with other material that would provide context and impact its message. This is a critical defect that defeats Plaintiffs' standing.

Given the purely hypothetical nature of these displays, the district court could not conduct the kind of "fact-intensive and context-specific analysis" that this Court has required in evaluating religious displays, which meant that the court should have also found the claims not yet ripe for review. *Staley v. Harris County*, 485 F.3d 305, 308-09 (5th Cir. 2007) (en banc). Because the district court's order relies on *Roake*'s departure from this Court's precedent regarding offended-observer standing, en banc review is warranted. *See* Fed. R. App. P. 40(b)(2)(A).

## B. The district court's Establishment Clause analysis, relying on *Roake*, revives *Lemon*, contrary to Supreme Court and circuit precedent.

En banc review is also independently warranted because the district court's analysis of the Establishment Clause issues conflicts with recent Supreme Court precedent and the decisions of other circuits. *See* Fed. R. App. P. 40(b)(2)(B), (C). Each error identified by the appellants' en banc petition in *Roake* is present here. *See Roake v. Brumley*, No. 24-30706, ECF No. 226, Petition for Rehearing En Banc at 6-16 (June 26, 2025).

**1.**    In holding that S.B.10 violates the Establishment Clause, the district court applied *Roake* to conclude that the statements of several legislators indicated that "a religious objective permeated the government's action," thus rendering S.B.10 unconstitutional. App.253. That holding of *Roake* depended upon application of the Supreme Court's decision in *Stone v. Graham*, which adopts "the first part of the *Lemon v. Kurtzman* test." 449 U.S. 39, 242-43 (1980) (per curiam); *see* App.255 (*Stone* "remains good law and controlling in this case").

Yet the Supreme Court has repudiated *Lemon* root and branch. In doing so, it could not have been more emphatic, repeatedly declaring that it had "long ago abandoned *Lemon* and its endorsement test offshoot," *Kennedy*, 597 U.S. at 534 (citing *Am. Legion v. Am. Humanists Ass'n*, 588 U.S. 29, 46-52 (2019) (plurality op.), and *Town of Greece v. Galloway*, 572 U.S. 565, 575-77 (2014)), and that *Lemon* is "now abrogated," *Groff v. DeJoy*, 600 U.S. 447, 460 & n.7 (2023). As the Supreme Court explained, it "has since made plain, too, that the Establishment Clause does not include anything like a 'modified heckler's veto, in which religious activity can be proscribed' based on 'perceptions' or 'discomfort.'" *Kennedy*, 597 U.S. at 534 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 119 (2001)). Nor should courts assume that displays with religious symbolism or meaning are motivated by a religious objective rather than "for the sake of their historical significance or their place in a common cultural heritage." *Am. Legion*, 588 U.S. at 54 (plurality op.).

This Court has followed suit and declared that *Lemon*'s "long Night of the Living Dead . . . is now over." *Freedom from Religion Found, Inc. v. Mack,* 49 F.4th 941, 954 n.20 (5th Cir. 2022) (internal citation omitted). Yet the district court,

following the panel in *Roake*, extended the logic of the "long ago abandoned" *Lemon* test, *Kennedy*, 597 U.S. at 534, to hold S.B.10 likely unlawful. The Court should intervene to prevent the panel's revivification of *Lemon* from taking hold as the law of the Circuit, as it has already begun to do.

**2.**  The district court alternatively concluded (again, dictated by the panel's analysis in *Roake*), that S.B.10 does not survive *Kennedy*'s history and tradition test, *see* 597 U.S. at 535-56, because "the permanent posting of the Ten Commandments in public school classrooms does not fit within and is not consistent with a broader tradition of using the Ten Commandments in public education." App.253-54; *see also id.* at 256-60 (describing historical evidence). That conclusion is independently worthy of this Court's review.

For one thing, that mode of analysis inverts the proper burden in Establishment Clause cases. The district court required Defendants to prove the validity of displaying the Ten Commandments by supplying "evidence of a broader tradition of using the Ten Commandments in public education." App.257, 259.

But under *Town of Greece*, *American Legion*, and *Kennedy*, an Establishment Clause plaintiff bears the burden of showing that a challenged practice fits within one of the hallmarks of religious establishment that would have been forbidden under the Establishment                                                      Clause. Applying this principle in *Town of Greece* the Court focused on the fact that those who challenged the legislative prayer practice failed to show that it "falls outside that tradition and transgresses the Establishment Clause." *Town of Greece*, 572 U.S. at 577. *See also Am. Legion*, 588 U.S. at 75-76 (Thomas J., concurring) ("In an action

claiming an unconstitutional establishment of religion, the plaintiff must demonstrate that he was actually coerced by government conduct that shares the characteristics of an establishment as understood at the founding."), *Kennedy*, 597 U.S. at 537 (concluding that the "evidence cannot sustain" the argument that a coach's public prayer practice "qualifies as impermissible coercion in light of the original meaning of the Establishment Clause")

That is the rule in the Third and Fourth Circuits. *See Hilsenrath v. Sch. Dist. of Chathams*, 136 F.4th 484, 491 & n.54 (3d Cir. 2025) (explaining that it is the plaintiff's burden to show that a challenged school policy "resembles one of these hallmarks of religious establishment"); *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023) ("[T]he plaintiff has the burden of proving a set of facts that would have historically been understood as an establishment of religion."). So *Roake* not only is in tension with Supreme Court precedent, but also creates a circuit split. This Court should correct that error and mend the circuit split by following the lead of the Third and Fourth Circuits in clarifying the proper post-*Lemon* standard.

**3.**  Last, and at a minimum, the district court erred by greenlighting a facial challenge to S.B.10 without carefully establishing that "there is no set of circumstances under which" S.B.10 is constitutional. *See Wash. State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *accord United States v. French*, 121 F.4th 538, 538 (5th Cir. 2024) (per curiam) (reiterating that this standard applies to "every facial challenge not 'based on the First Amendment.'"); *NetChoice, L.L.C. v. Paxton*, 121 F.4th 494, 498 (5th Cir. 2024) (remanding for

failure to consider the "the full range of activities" encompassed by a challenged statute).[4]

The district court failed to conduct this rigorous analysis. For example, the court failed to ask whether S.B.10 might lawfully be applied in high school classrooms in the light of the maturity of high school students and the expectation that these schools will be "nurseries of democracy" and cultivate a "marketplace of ideas." *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 190 (2021). And as already mentioned, the district court likewise failed to consider the possibility that displays might provide context for the Ten Commandments by highlighting their role in the foundation of the American legal system or emphasizing religious pluralism. This was a significant error meriting the en banc Court's attention.

## III. Granting Initial En Banc Review Will Assist this Court in Considering These Vital Issues

Granting initial en banc review for this case at the same time as the Court reviews the decision in *Roake* will significantly assist the Court's evaluation of both S.B.10 and the Louisiana law in *Roake*.

**A.** Most critically, this case provides a fuller historical record for the Court to evaluate the constitutionality of both S.B.10 and Louisiana's law. The district court

---

[4] In First Amendment cases involving freedom of speech, the Supreme Court has "lowered that very high bar" to "provide breathing room for free expression." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). This is not a free-speech case and so that lower standard should not apply. But in any event in *Moody* the Supreme Court clarified that even in the free-speech context facial challenges are designed to be "hard to win" and require careful context-specific analysis. *Id.*

and panel in *Roake* had only the testimony of Plaintiffs' expert Professor Steven Green. In its decision the panel noted that "Louisiana did not present any expert testimony." *Roake,* 141 F.4th at 648. And the district court in that case observed that there was a "lack of compelling counterevidence." *Id.* at 647

By contrast, the court in this case received expert reports and heard testimony from not just Professor Green but also Professor Hall. App.133-142, 144-179, 184-204, 304-507. Professor Hall is one of the nation's foremost experts regarding the Founders' views on religion and has thoroughly studied the influence of the Ten Commandments in American history. App.133-42 Professor Hall presented additional evidence of the role of the Ten Commandments in America's schools that the courts in *Roake* had not considered. App.165-72 For instance, Professor Hall identified several additional commonly used instructional school readers that featured lessons on the Ten Commandments. App.406-16. And he identified how some of these readers were used even after the establishment of public schools. App.170, 406-416 Professor Hall also pointed to the widespread influence of the Ten Commandments on this nation's legal system. App.159-62, 400-05.

Professor Hall specifically refutes some of the assumptions that Professor Green made and on which the *Roake* panel relied. For instance, the panel relied on the unrebutted assertion that the version of the Ten Commandments used by both S.B.10 and Louisiana's law was a "Protestant version of the Ten Commandments." *Roake*, 141 F.4th at 627. But Professor Hall demonstrated that the version used was actually developed by a non-sectarian committee and designed to minimize denominational differences. App.174-78, 419.

**B.** Professor Hall's compelling historical analysis is significant in this case given the important role that historical evidence plays in Establishment Clause cases. "[T]he Establishment Clause must be interpreted by reference to historical practices and understandings." *Kennedy*, 597 U.S. at 535 (quotation marks omitted). Historical analysis plays a key role in both steps of the test that the Supreme Court has laid out.

The Court must first ask whether a practice "was accepted by the Framers and has withstood the critical scrutiny of time and political change." *Town of Greece*, 572 U.S. at 577. If so, that is the end of the analysis and there is no Establishment Clause violation, because "[a] test that would sweep away what has so long been settled would create a new controversy and begin anew the very divisions along religious lines that the Establishment Clause seeks to prevent." *Id.* Accordingly, there is no need "to define the precise boundary of the Establishment Clause where history shows that the specific practice is permitted." *Id.* Thorough historical analysis is therefore indispensable.

If a practice does not have this kind of specific historic attestation, then the Court must inquire into whether the practice has "the hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Kennedy*, 597 U.S. at 537 & n. 5 (citing *Shurtleff v. Boston,* 596 U.S. 243, 285-86 (2022) (Gorsuch, J., concurring)). This test also requires careful historical analysis regarding the Founders' understanding of the "hallmarks of religious establishment."

This Court will be better equipped to conduct both steps of this analysis in light of the testimony of Professor Hall. Considering this case together with *Roake*—and allowing the State of Texas to be heard on these important issues—will significantly benefit the Court and warrants initial hearing en banc.

## Conclusion

The Court should grant the motion and set this appeal for initial en banc review.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General


Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ William R. Peterson
William R. Peterson
Solicitor General
William.Peterson@oag.texas.gov

William F. Cole
Principal Deputy Solicitor General

Daniel M. Ortner
Assistant Solicitor General


*Counsel for Defendants-Appellants*

## CERTIFICATE OF CONFERENCE

On September 2, 2025, counsel for Defendants-Appellants conferred by email with counsel for Plaintiffs-Appellees regarding their position on this motion. Plaintiffs-Appellees oppose the request for initial hearing en banc. They understand that a response to such a request must be directed by the Court. If so directed, they will file opposition papers.

/s/ William R. Peterson
WILLIAM R. PETERSON

## CERTIFICATE OF SERVICE

On September 2, 2025, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ William R. Peterson
WILLIAM R. PETERSON

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,813 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been

prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William R. Peterson
WILLIAM R. PETERSON