No. 25-50695

# In the United States Court of Appeals for the Fifth Circuit

RABBI MARA NATHAN, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST M.N.; VIRGINIA GALAVIZ EISENBERG AND RON EISENBERG, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST R.E.; CANTOR SETH ETTINGER AND SARAH ETTINGER, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST R.E.; ELIZABETH LEMASTER, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILDREN, REAL PARTY IN INTEREST K.L. AND REAL PARTY IN INTEREST L.L.; CARAH HELWIG, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILDREN, REAL PARTY IN INTEREST J.P. AND REAL PARTY IN INTEREST T.P.; ALYSSA MARTIN AND CODY BARKER, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILD, REAL PARTY IN INTEREST H.B.M.; LAUREN ERWIN, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST M.E.; REBEKAH LOWE AND THEODORE LOWE, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST E.R.L. AND REAL PARTY IN INTEREST E.M.L.; MARISSA NORDEN AND WILEY NORDEN, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, REAL PARTY IN INTEREST E.N. AND REAL PARTY IN INTEREST A.N.; RABBI JOSHUA FIXLER, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST D.F., REAL PARTY IN INTEREST E.F., AND REAL PARTY IN INTEREST F.F.; REVEREND CYNTHIA MOOD, ON BEHALF OF HERSELF AND ON BEHALF OF HER CHILDREN, REAL PARTY IN INTEREST L.M. AND REAL PARTY IN INTEREST C.M.; CHERYL REBECCA SMITH, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST L.P.J.; ARVIND CHANDRAKANTAN, ON BEHALF OF HIMSELF AND ON BEHALF OF HIS MINOR CHILDREN, REAL PARTY IN INTEREST V.C., REAL PARTY IN INTEREST M.C., AND REAL PARTY IN INTEREST A.C.; ALLISON FITZPATRICK, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILDREN, REAL PARTY IN INTEREST C.F. AND REAL PARTY IN INTEREST H.F.; AND MARA RICHARDS BIM, ON BEHALF OF HERSELF AND ON BEHALF OF HER MINOR CHILD, REAL PARTY IN INTEREST H.B.,

*Plaintiffs-Appellees,*

v.

ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT; NORTH EAST INDEPENDENT SCHOOL DISTRICT; LACKLAND INDEPENDENT SCHOOL DISTRICT; NORTHSIDE INDEPENDENT SCHOOL DISTRICT; AUSTIN INDEPENDENT SCHOOL DISTRICT; LAKE TRAVIS INDEPENDENT SCHOOL DISTRICT; DRIPPING SPRINGS INDEPENDENT SCHOOL DISTRICT; HOUSTON INDEPENDENT SCHOOL DISTRICT; FORT BEND INDEPENDENT SCHOOL DISTRICT; CYPRESS FAIRBANKS INDEPENDENT SCHOOL DISTRICT; AND PLANO INDEPENDENT SCHOOL DISTRICT,

*Defendants-Appellants.*

————————————————

On Appeal from the United States District Court
for the Western District of Texas
No. SA-25-cv-756, Hon. Fred Biery

————————————————

**PLAINTIFFS-APPELLEES' RESPONSE TO DEFENDANTS-APPELLANTS' PETITION FOR INITIAL HEARING EN BANC**

Heather L. Weaver
Daniel Mach
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street, NW, Ste. 600
Washington, DC 20005
(202) 675-2330
hweaver@aclu.org
dmach@aclu.org

Jonathan K. Youngwood
Janet A. Gochman
Kristen Crow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
kristen.crow@stblaw.com

*Counsel for Plaintiffs-Appellees*
*(continued on inside cover)*

### *Additional Counsel for Plaintiffs-Appellees*

Adriana Piñon
Chloe Kempf
Sarah Corning
Thomas Buser-Clancy
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS FOUNDATION,
INC.
PO Box 8306
Houston, TX 77288
(713) 942-8146
apinon@aclutx.org
ckempf@aclutx.org
scorning@aclutx.org
tbuser-clancy@aclutx.org

Patrick C. Elliott
Samuel T. Grover
FREEDOM FROM RELIGION
FOUNDATION
PO Box 750
Madison, WI 53701
(608) 256-8900
patrick@ffrf.org
sam@ffrf.org

V. Noah Gimbel
Jordan T. Krieger
Avia Gridi
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, D.C. 20001
(202) 636-5500
noah.gimbel@stblaw.com
jordan.krieger@stblaw.com
avia.gridi@stblaw.com

Alex J. Luchenitser
Amy Tai
AMERICANS UNITED FOR SEPARATION
OF CHURCH & STATE
1310 L Street, NW, Ste. 200
Washington, DC 20005
(202) 466-7306
luchenitser@au.org
tai@au.org

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies pursuant to Fifth Circuit Rule 28.2.1 that the following listed persons and private entities have an interest in the outcome of this case, including all private practice lawyers and private law firms currently engaged in this litigation.

**Plaintiffs-Appellees**: Rabbi Mara Nathan, on behalf of herself and on behalf of her minor child, real party in interest M.N.; Virginia Galaviz Eisenberg and Ron Eisenberg, on behalf of themselves and on behalf of their minor child, real party in interest R.E.; Cantor Seth Ettinger and Sarah Ettinger, on behalf of themselves and on behalf of their minor child, real party in interest R.E.; Elizabeth Lemaster, on behalf of herself and on behalf of her minor children, real party in interest K.L. and real party in interest L.L.; Carah Helwig, on behalf of herself and on behalf of her minor children, real party in interest J.P. and real party in interest T.P.; Alyssa Martin and Cody Barker, on behalf of themselves and on behalf of their minor child, real party in interest H.B.M.; Lauren Erwin, on behalf of herself and on behalf of her minor child, real party in interest M.E.; Rebekah Lowe and Theodore Lowe, on behalf of themselves and on behalf of their minor children, real party in

interest E.R.L. and real party in interest E.M.L.; Marissa Norden and Wiley Norden, on behalf of themselves and on behalf of their minor children, real party in interest E.N. and real party in interest A.N.; Rabbi Joshua Fixler, on behalf of himself and on behalf of his minor children, real party in interest D.F., real party in interest E.F., and real party in interest F.F.; Reverend Cynthia Mood, on behalf of herself and on behalf of her children, real party in interest L.M. and real party in interest C.M.; Cheryl Rebecca Smith, on behalf of herself and on behalf of her minor child, real party in interest L.P.J.; Arvind Chandrakantan, on behalf of himself and on behalf of his minor children, real party in interest V.C., real party in interest M.C., and real party in interest A.C.; Allison Fitzpatrick, on behalf of herself and on behalf of her minor children, real party in interest C.F. and real party in interest H.F.; and Mara Richards Bim, on behalf of herself and on behalf of her minor child, real party in interest H.B., represented by American Civil Liberties Union Foundation Attorneys Heather L. Weaver and Daniel Mach; American Civil Liberties Union of Texas Foundation, Inc. attorneys Adriana Piñon, Chloe Kempf, Sarah Corning, and Thomas Buser-Clancy; Americans United for Separation of Church & State attorneys Alex J. Luchenitser, Amy Tai,

and Jess Zalph; Freedom From Religion Foundation attorneys Patrick C. Elliott and Samuel T. Grover; and Simpson Thacher & Bartlett LLP attorneys Jonathan K. Youngwood, Janet A. Gochman, V. Noah Gimbel, Jordan T. Krieger, Avia Gridi, and Kristen Crow.

Date: September 12, 2025

*/s/ Jonathan K. Youngwood*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................... i

TABLE OF CONTENTS ............................................................. iv

TABLE OF AUTHORITIES .......................................................... v

INTRODUCTION .................................................................... 1

BACKGROUND ..................................................................... 3

ARGUMENT ........................................................................ 4

I.   INITIAL HEARING EN BANC IS DISFAVORED AND EXTREMELY RARE IN THIS CIRCUIT. ............................ 4

II.  DEFENDANTS' "JUDICIAL ECONOMY" RATIONALE IS WRONG AND LACKS ANY SUPPORTING AUTHORITY. ............. 5

III. DEFENDANTS' DISAGREEMENT WITH THE DISTRICT COURT'S APPLICATION OF PRECEDENT DOES NOT MERIT EN BANC REVIEW. ............................................. 7

    A. Defendants' Standing Arguments Misconstrue Basic Article III Principles. ....................................... 8

    B. Both the District Court and *Roake* Properly Applied *Stone* and *Kennedy*. ....................................... 12

        1. *Stone* remains good law and is controlling here. ............ 12

        2. The *Roake* panel did not misapply *Kennedy* or create a circuit split. ....................................... 15

    C. Professor Hall's Testimony Does Not Merit En Banc Review. ...................................................... 18

CONCLUSION ..................................................................... 19

CERTIFICATE OF SERVICE ....................................................... 21

CERTIFICATE OF COMPLIANCE ................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017) ..................................................................9

*Bosse v. Oklahoma,*
  580 U.S. 1 (2016) .................................................................................14

*Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n,*
  605 U.S. 238 (2025) ..............................................................................18

*Celanese Corp. v. Martin K. Eby Constr. Co.,*
  620 F.3d 529 (5th Cir. 2010) ................................................................16

*Doe v. Tangipahoa Par. Sch. Bd.,*
  494 F.3d 494 (5th Cir. 2007) (en banc) ..................................................9

*Engel v. Vitale,*
  370 U.S. 421 (1962) ..............................................................................13

*Firewalker-Fields v. Lee,*
  58 F.4th 104 (4th Cir. 2023) .................................................................17

*Harrison v. Young,*
  48 F.4th 331 (5th Cir. 2022) .................................................................19

*Hilsenrath v. Sch. Dist. of the Chathams,*
  136 F.4th 484 (3d Cir. 2025) ................................................................17

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022) ........................................................................ passim

*Lee v. Weisman,*
  505 U.S. 577 (1992) .........................................................................11, 16

*Lemon v. Kurtzman,*
  403 U.S. 602 (1971) ..........................................................................2, 13

*Mahanoy Area Sch. Dist. v. B. L.,*
  594 U.S. 180 (2021) ..............................................................................16

*Mahmoud v. Taylor,*
    145 S. Ct. 2332 (2025) ............................................................. passim

*Murray v. City of Austin,*
    947 F.2d 147 (5th Cir. 1991) ............................................... 10

*Nairne v. Landry,*
    No. 24-30115 (5th Cir. 2024) ................................................ 5

*Nat'l Coal. for Men v. Selective Serv. Sys.,*
    969 F.3d 546 (5th Cir. 2020) ............................................... 12

*Roake v. Brumley,*
    141 F.4th 614 (5th Cir. 2025) ................................... passim

*Santa Fe Indep. Sch. Dist. v. Doe,*
    530 U.S. 290 (2000) ............................................................. 16

*Sch. Dist. of Abington Twp. v. Schempp,*
    374 U.S. 203 (1963) .............................................. 11, 13, 16

*Staley v. Harris Cnty.,*
    485 F.3d 305 (5th Cir. 2007) (en banc) ....................... 11, 12

*Stone v. Graham,*
    449 U.S. 39 (1980) ....................................................... passim

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............................................................... 8

*United States v. American-Foreign Steamship Corp.,*
    363 U.S. 685 (1960) ............................................................... 5

*United States v. Salinas Rivera,*
    48 F. App'x 103 (5th Cir. 2002) ............................................ 5

*Van Orden v. Perry,*
    545 U.S. 677 (2005) ............................................................. 13

*Williams v. Catoe,*
    946 F.3d 278 (5th Cir. 2020) (en banc) ................................ 7

## <u>Statutes</u>

Senate Bill 10, 89th Leg. R.S., ch. 955 ("S.B. 10").......................... passim

## <u>Rules</u>

Fed. R. App. P. 40..................................................................................1, 4

Fifth Cir. L.R. 40, I.O.P...................................................................1, 5, 7

Fifth Cir. L.R. 40.2.1, I.O.P......................................................................7

## INTRODUCTION

Initial hearing en banc is highly disfavored. *See* Fed. R. App. P. 40(b)(2), 40(g); Fifth Cir. L.R. 40, I.O.P. Defendants do not even attempt to fit their Petition into Rule 40's strict framework for this extraordinarily rare proceeding. Instead, they argue, because the appellants in *Roake v. Brumley*, No. 24-30706, *petitioned* this Court for rehearing en banc, the Court should bypass panel review *here*. Pet.1. This "judicial economy" argument assumes—incorrectly—that the *Roake* petition is meritorious and will be granted. On the contrary, for all the reasons set forth by the *Roake* appellees in their opposition to the en banc petition, No. 24-30706, ECF 233 (July 7, 2025), this Court should decline en banc review in *Roake*. For the same reasons, as well as those discussed below, this Court should likewise reject Defendants' demand to skip panel review here. Indeed, given Defendants' suggestion that the district court's free-exercise ruling should be addressed in the first instance by a three-judge panel, Pet.6 n.1, hearing this case en banc now would undermine the very "judicial economy" interests on which Defendants purport to base their Petition.

The remainder of Defendants' Petition largely rehashes the meritless arguments from appellants' en banc petition in *Roake*. Defendants generically allege that the *Roake* panel erred in applying the law to the facts, causing the district court here to err in relying on *Roake*. But putting aside the fact that *Roake* was correctly decided and does not warrant en banc review, the district court here did not rely exclusively on *Roake*; its decision finds ample support in binding caselaw that addresses both standing and religious coercion in schools. Most importantly, this includes the Supreme Court's ruling in *Stone v. Graham*, 449 U.S. 39 (1980), which struck down a statute nearly identical to S.B. 10. Under this Court's own guidance for assessing the ongoing validity of Supreme Court jurisprudence, *Stone* remains good law: It has not been overruled by the Supreme Court, and contrary to Defendants' claim, *Stone* rests on multiple precedents that do not rely on *Lemon v. Kurtzman*, 403 U.S. 602 (1971). As in *Roake*, Defendants' allegations of error do not merit consideration en banc.

Defendants' Petition also argues that their proffered expert's testimony should be considered "alongside" *Roake* by the en banc Court. Pet.2. But that testimony pertains to historical practices and

understandings under *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), which this Court need not reach because it is bound by *Stone*. Furthermore, Defendants ignore that the district court, after hearing live testimony, credited Plaintiffs' expert testimony as more relevant and persuasive than Defendants' expert testimony. App.256, 263. Defendants' Petition should be denied.

## BACKGROUND

Under Senate Bill 10, 89th Leg. R.S., ch. 955 ("S.B. 10"), every public elementary and secondary school in Texas must "display in a conspicuous place in each classroom" a "durable poster or framed copy of the Ten Commandments[.]" *Id.* § 1. The display must "be at least 16 inches wide and 20 inches tall[,]" with the Commandments appearing in a "size and typeface that is legible to a person with average vision from anywhere in the classroom." *Id.* § 1(b)(1). Lawmakers selected the exact text of the Commandments—a Protestant rendition—to confront students daily in all their classrooms from kindergarten through senior year. App.128-31. S.B. 10 took effect on September 1, 2025. *Id.* § 3.

On July 2, 2025, sixteen multi-faith and nonreligious families with children in Texas public schools filed a Complaint alleging that S.B. 10

3

violates the Establishment and Free Exercise Clauses of the First Amendment, and they filed a motion to preliminarily enjoin its implementation. App.60-64. Defendants subsequently filed a motion to dismiss. App.213.

Following extensive briefing, the district court held a two-day hearing that included oral argument, live testimony of Plaintiffs' and Defendants' experts, and admission of Plaintiffs' testimony by declaration. App.232. Relying on binding Supreme Court and Fifth Circuit precedent, the district court ruled that Plaintiffs had sufficiently demonstrated standing and ripeness and that S.B. 10 likely violates the Establishment and Free Exercise Clauses. App.256, 261. The Court then preliminarily enjoined Defendants from enforcing S.B. 10. App.265. Defendants noticed their appeal on August 21, 2025. ECF 1.

## ARGUMENT

## I.    INITIAL HEARING EN BANC IS DISFAVORED AND EXTREMELY RARE IN THIS CIRCUIT.

"[I]nitial hearing en banc is not favored and ordinarily will not be ordered." Fed. R. App. P. 40(g). It is warranted only where a case involves a question of exceptional importance or when necessary to secure or maintain uniformity of the circuit's caselaw. *See id.*; Fed. R. App. P.

40(b)(2); *see also United States v. American-Foreign Steamship Corp.*, 363 U.S. 685, 689 (1960). "[A]lleged errors in the facts of the case … or in the application of correct precedent to the facts of the case are generally matters for panel" consideration, not the "extraordinary procedure" of en banc review. L.R. 40, I.O.P. (cleaned up).

Thus, rehearing en banc by this Court is rare, and *initial* hearing en banc is even rarer. *See id.* This Court routinely denies petitions for such review. *See, e.g.*, *Roake*, No. 24-30706, ECF 155 (Dec. 30, 2024); *Nairne v. Landry*, No. 24-30115, ECF 176-1 (June 24, 2024); *United States v. Salinas Rivera*, 48 F. App'x 103, 103 (5th Cir. 2002) (noting the "stringent standards for cases warranting initial en banc consideration"). Defendants here fall far short of the high bar for initial en banc consideration: The district court's decision was consistent with all relevant precedent, and Defendants provide no other compelling reason to circumvent the normal process of panel review.

## II. DEFENDANTS' "JUDICIAL ECONOMY" RATIONALE IS WRONG AND LACKS ANY SUPPORTING AUTHORITY.

Defendants' appeal to "judicial economy" in favor of initial hearing en banc is not supported by any legal authority and is contradicted by their own Petition. Defendants assert that "litigating this appeal

5

alongside *Roake* before the en banc Court rather than a three-judge panel" will be more efficient because any panel that hears the appeal in this case "will be bound to apply *Roake* under the rule of orderliness." Pet.7 (citation omitted). However, this Court has not granted—and should deny—rehearing en banc in *Roake*, and there is nothing inefficient about a panel applying *Roake* in this case.

*Roake*'s holding is based on binding Supreme Court precedents, including *Stone*. The arguments advanced by the *Roake* appellants in favor of rehearing en banc ignored this fact, relying instead on distortions and mischaracterization of both the panel's decision and the out-of-circuit opinions that they (incorrectly) claimed "conflict" with it. *Cf. infra* pp. 17-18. The *Roake* appellees' opposition brief identifies the petition's many flaws, and Plaintiffs here need not repeat them. *See Roake*, No. 24-30706, ECF 233 (July 7, 2025). At bottom, en banc review would be wasteful here—just as it would be in *Roake*—because the controlling Supreme Court precedent on which both the *Roake* panel and the district court here relied binds even the en banc Court.

Moreover, Defendants' Petition proposes a course of action that would create far more "delay and inefficiency," Pet.7, than would simply

following ordinary appellate procedure. Defendants request that this Court bifurcate their appeal, assigning to the "en banc court [the] review [of] the jurisdictional and Establishment Clause issues" and leaving for a "regular three-judge panel" the district court's Free Exercise Clause ruling. Pet.6 n.1.[1] Granting initial en banc review on some issues while reserving others for subsequent panel review—including an issue that independently supports the court's judgment—is nonsensical and would unduly waste this Court's "limited judicial resources." L.R. 40.2.1, I.O.P.[2]

## III. DEFENDANTS' DISAGREEMENT WITH THE DISTRICT COURT'S APPLICATION OF PRECEDENT DOES NOT MERIT EN BANC REVIEW.

Defendants' other arguments for initial en banc review amount to nothing more than a mischaracterization of well-settled governing caselaw and disagreement with the district court's (and the *Roake* panel's) application of that precedent to the facts of this case. This is not

---

[1] The district court's free-exercise holding draws support from the Supreme Court's post-*Roake* decision in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025). App.260. Meanwhile, *Roake* declined to reach plaintiffs' free-exercise claims. *Roake v. Brumley*, 141 F.4th 614, 637 n.14. (5th Cir. 2025). Accordingly, the district court's Free Exercise Clause ruling should be reviewed by a panel, as Defendants concede. Pet.6 n.1.

[2] *Williams v. Catoe*, 946 F.3d 278 (5th Cir. 2020) (en banc), Pet.1, did not involve a proposed consolidation of cases and is thus inapposite.

a valid justification for regular en banc review, let alone the extraordinary measure of initial hearing en banc.

## A. Defendants' Standing Arguments Misconstrue Basic Article III Principles.

Defendants' claim that an "actual encounter" with a state-sponsored religious display or practice is required *before* a plaintiff can sue was recently rejected by the Supreme Court in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025). The Court explained: "[W]hen a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit. . . . Instead, to pursue a pre-enforcement challenge, a plaintiff must show that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Id.* at 2358 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). *Mahmoud* reflects a long line of caselaw holding that plaintiffs need not wait to sue until they have suffered the very harms they seek to prevent. *See Roake*, 141 F.4th at 633-35 (collecting cases finding standing to enjoin threatened constitutional injury). Thus, the *Mahmoud* plaintiffs were not forced to delay suit until after they experienced an actual encounter with the challenged materials, even though they could not say "how a particular book [would be] used in a

8

particular classroom on a particular day." *See* 145 S. Ct. at 2358. Nor were Plaintiffs here required to wait to sue until they are subjected to S.B. 10's scriptural displays.

*Barber v. Bryant*, 860 F.3d 345, 354 (5th Cir. 2017), and *Doe v. Tangipahoa Parish School Board*, 494 F.3d 494, 497 (5th Cir. 2007) (en banc), *see* Pet.8, are consistent with this caselaw and belie Defendants' imagined "actual encounter" rule. *Barber affirmed* that "future injuries can provide the basis for standing," 860 F.3d at 357, a fact that Defendants omit.[3] Likewise, *Doe* expressly acknowledged that "[c]onstitutional standing" may be based on either "actual *or threatened* injury." 494 F.3d at 496 (emphasis added). The *Doe* plaintiffs lacked standing only because *no* encounter—past, present, or future—was evident from the record. *See id.* at 500 (DeMoss, J, concurring); *cf. Barber*, 860 F.3d at 357 (allegations of future injuries "must be contained in the record" (cleaned up)).

The record here "undoubtedly" demonstrates "a substantial risk" that Plaintiffs will suffer harm. *See Mahmoud*, 145 S. Ct. at 2358. Under

---

[3] *See Roake*, 141 F.4th at 634 n.8 (rejecting the defendants' attempt to cherry-pick the same *Barber* dictum).

S.B. 10, the minor-child Plaintiffs will be subjected to a state-mandated, religiously preferential version of the Ten Commandments in every classroom for the entirety of their public education. Plaintiffs, through their uncontroverted testimony, have demonstrated that this government conduct will violate and contradict their families' religious or nonreligious beliefs and practices and will harm them by (1) pressuring the child-Plaintiffs to observe, meditate on, venerate, and adopt the state's preferred religious doctrine and to suppress expression of their own religious or nonreligious backgrounds and views at school; and (2) interfering with the ability of the parent-Plaintiffs to direct their children's religious education and upbringing. *See* App.255 (citing Plaintiffs' declarations).

Because these are the very sort of harms that the Supreme Court has recognized as adequate to confer standing in this context,[4] neither

---

[4] Defendants incorrectly suggest that Plaintiffs' claims rest on so-called "offended-observer standing." Pet.8-9. To be sure, spiritual offense resulting from direct, unwelcome contact with a governmental religious display or practice is a sufficient basis for standing. *See, e.g.*, *Murray v. City of Austin*, 947 F.2d 147, 151-52 (5th Cir. 1991). But the injuries demonstrated by Plaintiffs here go far beyond any alleged offense associated with such displays. *See Roake*, 141 F.4th at 636-37 (holding that the plaintiffs had "allege[d] more than 'offense alone'").

the district court's decision here nor the panel's ruling in *Roake* expand First Amendment standing doctrine in any manner. *See, e.g.*, *Mahmoud*, 415 S. Ct. at 2342, 2358 (recognizing that injury to the "critical right of parents to guide the religious development of their children" occurs whenever a public school "requires them to submit their children to instruction that poses a very real threat of undermining the religious beliefs and practices that the parents wish to instill" (cleaned up)); *Lee v. Weisman*, 505 U.S. 577, 584 (1992) (enjoining, as unconstitutionally coercive, prayers at "future graduations," and holding that "a live and justiciable controversy is before us" because the child-plaintiff was "enrolled as a student at [the high school] and from the record it appear[ed] likely, if not certain, that an invocation and benediction will be conducted at her high school graduation"); *see also, e.g.*, *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 224 n.9 (1963) (holding that "school children and their parents" subjected to religious observances in school have standing because they are "directly affected by the laws and practices against which their complaints are directed").[5]

---

[5] Defendants also briefly reiterate their argument below that Plaintiffs' claims are "purely hypothetical" and "not yet ripe." Pet.9 (citing *Staley v. Harris Cnty.*, 485 F.3d 305, 308-09 (5th Cir. 2007) (en

**B.    Both the District Court and *Roake* Properly Applied *Stone* and *Kennedy*.**

Defendants' Establishment Clause arguments would require this Court to disregard the Supreme Court's binding precedent in *Stone* and its subsequent school-coercion jurisprudence. Because "[t]he Fifth Circuit is a strict stare decisis court and cannot ignore a decision from the Supreme Court unless directed to do so by the Court itself[,]" en banc review here or in *Roake* would be futile—even if the en banc Court believed that this precedent has been called into question. *See Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549 (5th Cir. 2020) (cleaned up).

1.    *Stone* *remains good law and is controlling here.*

Defendants invoke the Supreme Court's rejection of the *Lemon* test to dispute *Roake*'s (and, by extension, the district court's) reliance on *Stone*. Pet.10. Notably, Defendants stop short of explicitly arguing that *Stone* is no longer good law, or that an en banc panel of this Court could

---

banc). Both the district court here, App.237-38, and the *Roake* panel correctly rejected this argument in light of the extensive minimum requirements for all displays, as set forth in each statute. *See Roake*, 141 F.4th at 629-30 (holding that "[t]his case is not like *Staley*" because the statute "provides sufficient information for a fact-intensive and context-specific analysis").

overrule or distinguish *Stone*. But that is the thrust of their position: Defendants falsely accuse the *Roake* panel of improperly "reviv[ing] *Lemon*," Pet.9, because *Roake*'s discussion of legislative purpose, which the district court cited, "depended upon application of the Supreme Court's decision in *Stone v. Graham*, which adopts the first part" of the *Lemon* test, Pet.10 (cleaned up).

However, as *Roake* correctly explained, the Supreme Court's repudiation of the *Lemon* test did not overrule *Stone*'s binding holding that posting the Ten Commandments in every public-school classroom violates the Establishment Clause. *See Roake*, 141 F.4th at 642. S.B. 10's statutory directives are on all fours with those in *Stone*—if anything, S.B. 10 is even more obviously unconstitutional. *See* App.78.

Indeed, in *Van Orden v. Perry*, 545 U.S. 677 (2005), the Court held that *Stone* "almost exclusive[ly] reli[ed] upon two of our school prayer cases." 545 U.S. at 690-91 (plurality opinion) (citing *Schempp* and *Engel v. Vitale*, 370 U.S. 421 (1962)). And "*Kennedy* does not mention *Stone* or purport to overrule the decisions (other than *Lemon)* on which *Stone* relies, i.e., *Schempp* or *Engel*." *Roake*, 141 F.4th at 642. Those cases—like *Stone*—continue to bind lower courts unless

and until the Supreme Court overturns them. *See id.* ("It is the Supreme Court's 'prerogative alone to overrule one of its precedents.'" (quoting *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016))).

In asserting that *Roake* applied *Lemon* by citing *Stone*, Defendants not only ignore that *Stone* remains binding law, but they also misunderstand the reason why the *Roake* panel (and the district court here) examined legislative purpose: to determine whether the respective statutes fit into *Stone*'s allowance of teaching about the Bible "'in an appropriate study of history, civilization, ethics, comparative religion, or the like.'" *See id.* at 643 (quoting *Stone*, 449 U.S. at 42). The clear proselytizing objectives of sponsoring legislators in both Louisiana and Texas undermined any such argument. *See id.* at 643 n.21 ("We do not undertake this analysis to revive *Lemon*, but only for the limited purpose of deciding whether *Stone*'s facts and reasoning control.").

Accordingly, *Roake* correctly held that "*Stone v. Graham* is controlling." *Id.* at 645. And only the Supreme Court—not an en banc panel of this Court—could possibly reach a contrary conclusion.

2.    *The* Roake *panel did not misapply* Kennedy *or create a circuit split.*

Defendants are incorrect that *Roake* and the district court misapplied *Kennedy*. *See* Pet.11. They argue that "an Establishment Clause plaintiff bears the burden of showing that a challenged practice fits within one of the hallmarks of religious establishment." *Id.* But even if Defendants' articulation of what is required under *Kennedy* were correct (it is not), Plaintiffs *have shown* that S.B. 10's displays will give rise to the most egregious hallmark of them all: religious coercion. *See Roake*, 141 F.4th at 648 n.26 (holding that, even if plaintiffs have the evidentiary burden in *Kennedy*'s "historical analysis," they "have met it").[6]

*Roake* is fully consistent with *Kennedy*'s admonition that coercion "'was among the foremost hallmarks of religious establishments the

---

[6] In addition to demonstrating that S.B. 10 displays fit within the longstanding constitutional prohibition on coercion, *supra* pp. 12-14, Plaintiffs also demonstrated, through expert testimony, that there is "insufficient evidence of a broader tradition of using the Ten Commandments in public education, and there is no tradition of permanently displaying the Ten Commandments in public-school classrooms"—a finding the district court reached here only after hearing live testimony from the parties' experts. App.256, 60.

framers sought to prohibit when they adopted the First Amendment.'"
*See id.* at 645 (quoting 597 U.S. at 537). As *Mahmoud* reaffirmed, "[t]he
government's operation of public schools . . . implicates direct, coercive
interactions between the State and its young residents." 145 S. Ct. at
2357. And it is well settled that "'[t]here are heightened concerns with
protecting freedom of conscience from subtle coercive pressure in the
elementary and secondary public schools.'" *Id.* at 2355 (quoting *Lee*, 505
U.S. at 592). The district court's conclusion that S.B. 10 displays are
religiously coercive is rooted in the same line of caselaw applying to
public schools, as well as the Founders' profound concerns about religious
coercion. App.254-55; App.258-60.[7]

---

[7] Defendants' suggestion that S.B. 10 would be constitutional if
displays were placed in high schools alone was not raised below and is
waived. *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529,
531 (5th Cir. 2010). It is also beside the point. S.B. 10 is not limited to
high schools. *See* S.B. 10 § 1(f) ("Notwithstanding any other law, a public
elementary or *secondary* school is not exempt from this section."
(emphasis added)). And the Supreme Court's protections against
religious coercion do not end at the eighth grade. The Court has
repeatedly recognized that religious practices applying to high schoolers
are unconstitutionally coercive. *See, e.g., Lee*, 505 U.S. at 584 (enjoining
prayer at high school graduation); *Santa Fe Indep. Sch. Dist. v. Doe*, 530
U.S. 290, 312 (2000) (enjoining official prayer before high school football
games); *Schempp*, 374 U.S. at 206 (noting that plaintiffs' children
attended a senior high school). *Mahanoy Area Sch. Dist. v. B. L.*, 594 U.S.
180, 190 (2021), Pet.13, pertains to schools' ability to regulate off-campus

Neither of the out-of-circuit cases Defendants cite conflict with *Roake*'s application of *Kennedy*. *See* Pet.12. *Hilsenrath v. School District of Chathams*, 136 F.4th 484 (3d Cir. 2025)—like *Kennedy*, *Roake*, and the district court's opinion here—recognizes coercion as one of the foremost hallmarks of religious establishment. *Id.* at 492. The challenged instruction there—two Islam lessons included as part of a year-long World Cultures and Geography class—was not coercive because, unlike S.B. 10's displays, it was "'integrated into the school curriculum' as part of 'an appropriate study of history, civilization,' and 'comparative religion.'" *Id.* at 493 (quoting *Stone*, 449 U.S. at 42).

The Fourth Circuit's ruling in *Firewalker-Fields v. Lee*, 58 F.4th 104 (4th Cir. 2023), meanwhile, does not make any reference to "hallmarks" and does not even conduct an Establishment Clause analysis under *Kennedy*. *See id.* at 122. Instead, it remands the plaintiff's claims for further factual development to inform any historical analysis, rather

---

student speech; it has no bearing on a district's imposition of scripture on students for nearly every hour they are in school.

than analyzing the historical evidence submitted to the appellate court in the first instance. *Id.*[8]

### C.    Professor Hall's Testimony Does Not Merit En Banc Review.

Defendants suggest that the Court should grant initial en banc review "alongside" a rehearing of *Roake* because it will "better equip" the Court to assess the historical record "in light of the testimony of Professor Hall." Pet.21. They cite no caselaw supporting this view. Regardless, Professor Hall's testimony would not aid the Court in *Roake*.

*First*, given the binding nature of *Stone*, a court need not reach the historical record to find S.B. 10 (or Louisiana's statute) unconstitutional. It would waste—not preserve—judicial resources for the en banc Court to delve into any historical analysis here, where *Stone* is determinative.

---

[8] The district court also relied on the Supreme Court's post-*Roake* decision in *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, 605 U.S. 238 (2025), for the proposition "that the Establishment Clause requires that the 'government maintain neutrality between religion[s].'" App.261-62 (quoting 605 U.S. at 254). Because S.B. 10 "impermissibly takes sides on theological questions and officially favors Christian denominations over others," it violates the Establishment Clause's neutrality mandate, independent of its coercive effect. *Id.*

*Second*, the district court found Dr. Green's testimony "more persuasive" than Hall's, after hearing from both in court. *See* App.256, 263. Because this factual finding is entitled to significant deference and clear-error review, it undermines any utility this Court could glean from Hall's testimony. *See Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022). Indeed, Defendants do not even allege clear error; nor do they explain how the en banc Court would benefit from Hall's testimony. In fact, Professor Hall filed a Fifth Circuit amicus brief in *Roake* similar to his expert report below. No. 24-30706, ECF 101 (Dec. 17, 2024). Like the district court here, the panel was not persuaded by his opinions.

## CONCLUSION

For the foregoing reasons, Defendants' Petition should be denied.

Respectfully submitted,

Dated: September 12, 2025    */s/ Jonathan K. Youngwood*

Heather L. Weaver           Jonathan K. Youngwood
Daniel Mach                 SIMPSON THACHER & BARTLETT LLP
AMERICAN CIVIL LIBERTIES     425 Lexington Avenue
UNION FOUNDATION             New York, NY 10017
915 15th Street, NW, Ste. 600
Washington, DC 20005

19

Adriana Piñon
Chloe Kempf
Sarah Corning
Thomas Buser-Clancy
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
FOUNDATION, INC.
PO Box 8306
Houston, TX 77288

Alex J. Luchenitser
AMERICANS UNITED FOR SEPARATION
OF CHURCH & STATE
1310 L Street, NW, Ste. 200
Washington, DC 20005

Patrick C. Elliott
Samuel T. Grover
FREEDOM FROM RELIGION
FOUNDATION
PO Box 750
Madison, WI 53701

## CERTIFICATE OF SERVICE

On September 12, 2025, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Jonathan K. Youngwood*

Jonathan K. Youngwood

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,835 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jonathan K. Youngwood*
Jonathan K. Youngwood