# United States Court of Appeals
## for the
## Fifth Circuit

---

Case No. 25-50695

MARA NATHAN, RABBI, on behalf of herself and on behalf of her minor child,
M.N.; VIRGINIA GALAVIZ EISENBERG, on behalf of herself and on behalf of
her minor child, R.E.; RON EISENBERG, on behalf of himself and on behalf of
his minor child, R.E.; SETH ETTINGER, CANTOR, on behalf of himself and on
behalf of his minor child, R.E.; SARAH ETTINGER, on behalf of herself and on
behalf of her minor child, R.E.; ELIZABETH LEMASTER, on behalf of herself
and on behalf of her minor children, K.L. & L.L.; CARAH HELWIG, on behalf
of herself and on behalf of her minor children, J.P. & T.P.; ALYSSA MARTIN,
on behalf of herself and on behalf on her minor child, H.B.M.; CODY BARKER,
on behalf of himself and on behalf of his minor child, H.B.M.; LAUREN
ERWIN, on behalf of herself and on behalf of her minor child, M.E.; REBEKAH
LOWE, on behalf of herself and on behalf of her minor children, E.R.L. &
E.M.L.; THEODORE LOWE, on behalf of himself and on behalf of his minor
children, E.R.L. & E.M.L.; MARISSA NORDEN, on behalf of herself and on
behalf of her minor children, E.N. & A.N.; WILEY NORDEN, on behalf of
himself and on behalf of his minor children, E.N. & A.N.; JOSHUA FIXLER,
RABBI, on behalf of himself and on behalf on his minor children, D.F., E.F., &
F.F.; CYNTHIA MOOD, REVEREND, on behalf of herself and on behalf of her
minor children, L.M. & C.M.; CHERYL REBECCA SMITH, on behalf of herself
and on behalf of her minor child, L.P.J.; ARVIND CHANDRAKANTAN, on
behalf of himself and on behalf of his minor children, V.C., M.C. & A.C.;
ALLISON FITZPATRICK, on behalf of herself and on behalf of her minor
children, C.F. & H.F.; MARA RICHARDS BIM, on behalf of herself
and on behalf of her minor child, H.B.,

*Plaintiffs-Appellees,*

v.

ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT; NORTH EAST
INDEPENDENT SCHOOL DISTRICT; LACKLAND INDEPENDENT
SCHOOL DISTRICT; NORTHSIDE INDEPENDENT SCHOOL DISTRICT;
LAKE TRAVIS INDEPENDENT SCHOOL DISTRICT; DRIPPING SPRINGS
INDEPENDENT SCHOOL DISTRICT; FORT BEND INDEPENDENT
SCHOOL DISTRICT; CYPRESS FAIRBANKS INDEPENDENT SCHOOL
DISTRICT; PLANO INDEPENDENT SCHOOL DISTRICT,

*Defendants-Appellants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

## BRIEF FOR PLAINTIFFS-APPELLEES
## FOR INITIAL HEARING EN BANC

ALEX J. LUCHENITSER
AMY TAI
AMERICANS UNITED FOR
   SEPARATION OF CHURCH & STATE
1310 L Street, NW, Suite 200
Washington, DC 20005
(202) 466-7306

ADRIANA PIÑON
THOMAS BUSER-CLANCY
CHLOE KEMPF
SARAH CORNING
AMERICAN CIVIL LIBERTIES UNION
   OF TEXAS FOUNDATION, INC.
PO Box 8306
Houston, Texas 77288
(713) 942-8146

PATRICK C. ELLIOTT
SAMUEL T. GROVER
FREEDOM FROM RELIGION FOUNDATION
PO Box 750
Madison, Wisconsin 53701
(608) 256-8900

JONATHAN K. YOUNGWOOD
JANET A. GOCHMAN
GRISELDA CABRERA
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

DANIEL MACH
ARIJEET SENSHARMA
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
915 15th Street, NW, Suite 600
Washington, DC 20005
(202) 675-2330

V. NOAH GIMBEL
AVIA GRIDI
JORDAN T. KRIEGER
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, DC 20001
(202) 636-5500

*Attorneys for Plaintiffs-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

*Nathan, et al. v. Alamo Heights Independent School District,*
*et al.*, No. 25-50695

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees**: Mara Nathan, Rabbi, on behalf of herself and on behalf of her minor child, M.N.; Virginia Galaviz Eisenberg, on behalf of herself and on behalf of her minor child, R.E.; Ron Eisenberg, on behalf of himself and on behalf of his minor child, R.E.; Seth Ettinger, Cantor, on behalf of himself and on behalf of his minor child, R.E.; Sarah Ettinger, on behalf of herself and on behalf of her minor child, R.E; Elizabeth Lemaster, on behalf of herself and on behalf of her minor children, K.L. & L.L.; Carah Helwig, on behalf of herself and on behalf of her minor children, J.P. & T.P.; Alyssa Martin, on behalf of herself and on behalf of her minor child, H.B.M.; Cody Barker, on behalf of himself and on behalf of his minor child, H.B.M.; Lauren Erwin, on behalf of herself and on behalf of her minor child, M.E.; Rebekah Lowe, on behalf

of herself and on behalf of her minor children, E.R.L. & E.M.L.; Theodore Lowe, on behalf of himself and on behalf of his minor children, E.R.L. & E.M.L.; Marissa Norden, on behalf of herself and on behalf of her minor children, E.N. & A.N.; Wiley Norden, on behalf of himself and on behalf of his minor children, E.N. & A.N.; Joshua Fixler, Rabbi, on behalf of himself and on behalf of his minor children, D.F., E.F., & F.F.; Cynthia Mood, Reverend, on behalf of herself and on behalf of her minor children, L.M. & C.M.; Cheryl Rebecca Smith, on behalf of herself and on behalf of her minor child, L.P.J.; Arvind Chandrakantan, on behalf of himself and on behalf of his minor children, V.C., M.C., & A.C.; Allison Fitzpatrick, on behalf of herself and on behalf of her minor children, C.F. & H.F.; Mara Richards Bim, on behalf of herself and on behalf of her minor child, H.B., represented by American Civil Liberties Union Foundation attorneys Daniel Mach and Arijeet Sensharma; American Civil Liberties Union Foundation of Texas attorneys Adriana Piñon, Thomas Buser-Clancy, Chloe Kempf, and Sarah Corning; Americans United for Separation of Church & State attorneys Alex J. Luchenitser, Amy Tai, Jess Zalph, and Alexandra Zaretsky; Freedom From Religion Foundation attorneys Patrick C. Elliott and Samuel T. Grover; and Simpson Thacher

& Bartlett LLP attorneys Jonathan K. Youngwood, Janet A. Gochman,
V. Noah Gimbel, Avia Gridi, Griselda Cabrera, and Jordan T. Krieger.

Date: December 22, 2025

/s/ Jonathan K. Youngwood

*Counsel for Plaintiffs-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is scheduled for January 20, 2026. Plaintiffs-Appellees agree that oral argument is warranted.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................iv

TABLE OF CONTENTS ...................................................................v

TABLE OF AUTHORITIES..............................................................vii

INTRODUCTION............................................................................1

COUNTER-STATEMENT ON JURISDICTION...................................4

COUNTER-STATEMENT OF THE ISSUES .........................................5

COUNTER-STATEMENT OF THE CASE.............................................6

I.   FACTUAL BACKGROUND ....................................................6

II.  PROCEDURAL BACKGROUND.............................................9

III. THE PRESENT APPEAL......................................................12

IV. TEXAS'S POST-*NATHAN* CONDUCT .............................................12

SUMMARY OF THE ARGUMENT ...................................................14

ARGUMENT ................................................................................18

I.   S.B. 10 IS FACIALLY UNCONSTITUTIONAL. ......................18

   A.  S.B. 10 Violates the Establishment Clause Under *Stone*. .........19

      1.  *Stone* is good law. ..................................................20

      2.  *Stone* controls. ....................................................22

         a.  The text and effects of S.B. 10 mirror the statute
            struck down in *Stone*.....................................22

         b.  Even a secular aim could not distinguish this case
            from *Stone*, and in any event, Texas has not
            articulated any. ...........................................24

   B.  S.B. 10 Violates the Establishment Clause Prohibition on
       Religious Coercion....................................................28

      1.  S.B. 10 is unconstitutionally coercive.................................29

      2.  Defendants' proposed "hallmarks" test
         has no basis in law. ..................................................36

a. Neither *Kennedy* nor *Shurtleff* purported to constrain the Establishment Clause to six exclusive "hallmarks." .................................................. 36

b. No authority requires a plaintiff to prove that a challenged practice meets the definition of one of the *Shurtleff* "hallmarks." ........................................... 39

c. S.B. 10 violates the original intent and meaning of the Establishment Clause. ...................................... 42

d. S.B. 10 does not fit within any historical tradition ........................................................................ 44

C. S.B. 10 Violates the Establishment Clause Prohibition Against Denominational Preference. ........................................... 50

II. S.B. 10 VIOLATES THE FREE EXERCISE CLAUSE. ................... 54

A. *Mahmoud* underscores Plaintiffs' right to relief under the Free Exercise Clause. .................................................. 56

B. There is no practicable "opt-out" from S.B. 10's coercive effects. .............................................................. 61

III. THERE IS NO SET OF CIRCUMSTANCES UNDER WHICH THE IMPLEMENTATION OF S.B. 10 IS CONSTITUTIONAL. ..... 64

IV. THE DISTRICT COURT PROPERLY EXERCISED ITS JURISDICTION. .................................................................... 66

V. THE DISTRICT COURT'S PRELIMINARY INJUNCTION AND THE SCOPE THEREOF ARE PROPER. ............................... 69

CONCLUSION ................................................................. 71

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ohio Found., Inc. v. Ashbrook*,
  211 F. Supp. 2d 837 (N.D. Ohio 2002),
  *aff'd*, 375 F.3d 484 (6th Cir. 2004) ................................................ 46, 47

*Agostini v. Felton*,
  521 U.S. 203 (1997) ................................................................................ 21

*Am. Legion v. Am. Humanist Assoc.*,
  588 U.S. 29 (2019) .................................................................................. 68

*Ashby v. Schertz-Cibolo-Universal City Indep. Sch. Dist.*,
  No. 5:25-cv-01613-FB (W.D. Tex. 2025) .............................................. 14

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
  627 F.3d 547 (5th Cir. 2020) ................................................................. 68

*Book People, Inc. v. Wong*,
  91 F.4th 318 (5th Cir. 2024) ................................................................. 70

*Boos v. Barry*,
  485 U.S. 312 (1988) ................................................................................ 34

*Bosse v. Oklahoma*,
  580 U.S. 1 (2016) .................................................................................... 20

*Brnovich v. Democratic Nat'l Comm.*,
  594 U.S. 647 (2021) ................................................................................ 27

*Carson v. Makin*,
  596 U.S. 767 (2022) .......................................................................... 54, 55

*Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus.*
  *Review Comm'n*,
  605 U.S. 238 (2025) ........................................................ 38, 50, 51, 54

*City of Elkhart v. Books*,
  532 U.S. 1058 (2001) .............................................................................. 35

*Cnty. of Allegheny v. ACLU*,
  492 U.S. 573 (1989) .......................................................................... 22, 29

*Croft v. Governor of Tex.*,
    562 F.3d 735 (5th Cir. 2009) ................................................................ 27

*Croft v. Perry*,
    624 F.3d 157 (5th Cir. 2010) ................................................................ 18

*Doe ex rel. Doe v. Elmbrook Sch. Dist.*,
    687 F.3d 840 (7th Cir. 2012) ................................................................ 35

*Doe v. Sch. Bd. of Ouachita Par.*,
    274 F.3d 289 (5th Cir. 2001) ................................................................ 30

*Edwards v. Aguillard*,
    482 U.S. 578 (1987) ............................................................................. 30

*Engel v. Vitale*,
    370 U.S. 421(1962) ................................................... 20, 33, 49, 58

*Epperson v. Arkansas*,
    393 U.S. 97 (1968) ............................................................................... 53

*Firewalker-Fields v. Lee*,
    58 F.4th 104 (4th Cir. 2023) ...................................................... 40, 41

*Freedom from Religious Found., Inc. v. New Kensington Arnold
    Sch. Dist.*,
    832 F.3d 469 (3d Cir. 2016) ................................................................ 69

*Harrison v. Young*,
    48 F.4th 331 (5th Cir. 2022) ...................................................... 69, 70

*Hilsenrath v. Sch. Dist. of the Chathams*,
    136 F.4th 484 (3d Cir. 2025) ...................................................... 39, 40

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
    88 F.3d 274 (5th Cir. 1996) ........................................................ 30, 31

*Jusino v. Fed'n of Cath. Teachers, Inc.*,
    54 F.4th 95 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1056 (2023) .......... 21

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) ................................................................ passim

*Larson v. Valente*,
    456 U.S. 228 (1982) ................................................................ 38, 39, 54

*Lee v. Weisman*,
    505 U.S. 577 (1992) ................................................................ passim

*Lefebure v. D'Aquilla*,
    15 F.4th 650 (5th Cir. 2021) ...................................................... 21

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ................................................................. 15

*Mahmoud v. Taylor*,
    606 U.S. 522 (2025) ......................................................... passim

*Marsh v. Chambers*,
    463 U.S. 783 (1983) ............................................................ 42, 49

*McCreary Cnty. v. ACLU*,
    545 U.S. 844 (2005) ................................................... 22, 52, 62

*Murray v. City of Austin*,
    947 F.2d 147 (5th Cir. 1991) ................................................. 69

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
    969 F.3d 546 (5th Cir. 2020) ................................................. 20

*N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*,
    597 U.S. 1 (2022) .............................................................. 16, 41

*NLRB v. Cath. Bishop of Chicago*,
    440 U.S. 490 (1979) ............................................................... 21

*Parr v. Cougle*,
    127 F.4th 967 (5th Cir. 2025) ............................................... 67

*Ringer v. Comal Indep. Sch. Dist.*,
    2025 WL 3227708 (W.D. Tex. Nov. 18, 2025) ................. 13, 17, 63

*Roake v. Brumley*,
    141 F.4th 614 (5th Cir. 2025) ......................................... 18, 37

*Roake v. Brumley*,
    756 F. Supp. 3d 93 (M.D. La. 2024) ............................... 18, 34

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995) ............................................................... 53

*Santa Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000) .................................................. 15, 31, 39

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1963) ........................................................ passim

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ........................................................ 16, 38

*Stinson v. Fayetteville Sch. Dist. No. 1*,
    2025 WL 2231053 (W.D. Ark. Aug. 4, 2025) ..................... 18, 33, 63, 64

*Stinson v. Fayetteville Sch. Dist. No. 1 ex rel. Griffin*,
    2025 WL 2619159 (W.D. Ark. Sept. 10, 2025) .................... 18

*Stinson v. Fayetteville Sch. Dist. No. 1*,
    Civ. No. 25-05127-TLB (W.D. Ark. Nov. 10, 2025) ............... 18

*Stone v. Graham*,
    449 U.S. 39 (1980)................................................. passim

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014)........................................... 29, 45, 47

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)................................................... 70

*United States v. Rahimi*,
    602 U.S. 680 (2024)................................................... 44

*United States v. Salerno*,
    481 U.S. 739 (1987)................................................... 21

*Van Orden v. Perry*,
    545 U.S. 677 (2005).............................................. passim

*Wallace v. Jaffree*,
    472 U.S. 38 (1985).................................................... 33

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*,
    945 F.3d 206 (5th Cir. 2019).......................................... 28

*Washegesic v. Bloomingdale Pub. Sch.*,
    813 F. Supp. 559 (W.D. Mich. 1993), *aff'd*, 33 F.3d 679 (6th
    Cir. 1994) ........................................................... 33

*Webster v. Kijakazi*,
    19 F.4th 715 (5th Cir. 2021) ......................................... 43

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972).............................................. 55, 56

## Rules/Statutes

28 U.S.C. § 1292(a)(1)....................................................................4

28 U.S.C. § 1331 ............................................................................4

28 U.S.C. § 1343(a)(3)....................................................................4

S.B. 10, 89th Leg. R.S. ch. 955 .............................................. passim

S.B. 10 § 1.0041(a)............................................................... 1, 6, 23

S.B. 10 § 1.0041(b)........................................................... 1, 6, 7, 23

S.B. 10 § 1.0041(c) .........................................................................7

S.B. 10 § 1.0041(g) .......................................................................10

Tex. Educ. Code § 25.093(a) ..................................................... 6, 63

Tex. Fam. Code § 65.003(b) ................................................. 6, 62, 63

## Secondary Sources

Legal Advisory (Sept. 26, 2025), https://shorturl.at/SgyoG...................13

Press Release (Aug. 25, 2025), https://shorturl.at/B9lQQ......................12

Press Release (Nov. 18, 2025), https://shorturl.at/VX3Wn ...................13

# <u>INTRODUCTION</u>

The Constitution prohibits states from using public education to coerce schoolchildren into religious observance. Nevertheless, the Texas legislature passed—and the governor signed into law—S.B. 10, 89th Leg. R.S. ch. 955 ("S.B. 10" or "the Act"), which does just that. The Act requires every public elementary and secondary school in Texas to "display in a conspicuous place in each classroom" a "durable poster or framed copy of the Ten Commandments." *Id.* § 1.0041(a). The Act mandates that each display "be at least 16 inches wide and 20 inches tall," with the Commandments appearing in a "size and typeface…legible to a person with average vision from anywhere in the classroom." *Id.* § 1.0041(b)(1)-(2). S.B. 10 requires that these displays "include *only* the text of the Ten Commandments as provided by" the statute. *Id.* § 1.0041(b)(1) (emphasis added). That text, explicitly selected by the legislature, is a Protestant rendition of scripture derived from the King James Bible. It conflicts with Catholic and Jewish versions of the Decalogue, and runs counter to the beliefs of atheists, agnostics, Hindus, Muslims, Buddhists, and many other Texas families.

1

The Act tracks the Kentucky statute struck down by the Supreme Court under the Establishment Clause in *Stone v. Graham*, 449 U.S. 39 (1980). *Stone* remains good law and requires a ruling in Plaintiffs' favor on their Establishment Clause claims. Defendants' arguments to the contrary would have this Court ignore the black-letter rule that only the Supreme Court may overturn its own precedents.

Moreover, First Amendment jurisprudence beyond *Stone* makes clear that the Act is unconstitutional because it is religiously coercive. S.B. 10 will inscribe every Texas teaching space—pre-K-12, history to math, biology to world languages—with scripture commanding public-school children to revere and obey "the LORD thy God." The omnipresence of S.B. 10's religious displays will unlawfully coerce children into religious observance; the denominational preference evinced in the statute's selection of Protestant scripture violates the Establishment Clause's mandate that the state remain neutral in matters of faith.

Unable to propound a meritorious defense of S.B. 10's constitutionality under controlling Establishment Clause precedent, Defendants attempt to invent a new legal standard tailored to insulate

S.B. 10 from constitutional scrutiny. Defendants' rigid and baseless "hallmarks" test would close the courts to any plaintiff seeking to challenge practically any use of government power to advance religious objectives short of required church attendance. The proposed test would vastly expand the government's power to inculcate religious beliefs and practices in schools, eroding core protections guaranteed by the First Amendment.

By Defendants' logic, the history of displaying the Ten Commandments in public places like the Texas Capitol grounds gives states a free pass to put on school walls any amount of religious messaging as long as those messages are delivered visually and not orally. But a public school is not the public square, and exposure to written scripture can be just as unconstitutional as hearing it. Children—obligated by law to attend school—are not mere bystanders who can look away from coercive scripture in each and every classroom. There is no historical tradition of permanently and ubiquitously displaying the Ten Commandments in American public schools or otherwise using American public schools to proselytize children. Indeed, any law that would mobilize public schools for religious indoctrination is

axiomatically a "law respecting an establishment of religion," barred by the plain text of the First Amendment.

The Act also violates the Free Exercise Clause by burdening the religious beliefs of students who may not conform to the state's preferred religious doctrine, and by usurping parents' First Amendment right to guide their children's religious development. Plaintiffs' undisputed testimony, which Defendants would simply have this Court ignore, makes this clear. Even if S.B. 10 displays were "silent," that would not render them any less burdensome when students will confront them in every classroom, for every subject, at every grade-level, every day of their public-school education.

If the injunction is lifted, S.B. 10 will cause Plaintiffs irreparable harm. The rights to decide which religion, if any, to follow and which religious beliefs, if any, to adopt and practice are constitutionally reserved to individuals, parents, and families—not government officials.

## **<u>COUNTER-STATEMENT ON JURISDICTION</u>**

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## COUNTER-STATEMENT OF THE ISSUES

1.    Whether the district court correctly held that this case is controlled by *Stone v. Graham* and that the Act is facially unconstitutional under *Stone*.

2.    Whether the district court correctly concluded that S.B. 10's minimum requirements would coerce pre-K-12 students into religious observance and reflect denominational preference in facial violation of the Establishment Clause.

3.    Whether the district court clearly erred in its factual finding that there is no history and tradition of the government permanently displaying or otherwise proliferating the Ten Commandments in public schools.

4.    Whether the district court correctly concluded that permanently displaying the Ten Commandments in every public-school classroom burdens schoolchildren's religious beliefs and interferes with parent-Plaintiffs' free-exercise right to direct their children's spiritual development.

5.    Whether the district court abused its discretion in granting preliminary injunctive relief.

## COUNTER-STATEMENT OF THE CASE

### I.   FACTUAL BACKGROUND

On June 20, 2025, Texas Governor Greg Abbott signed into law S.B. 10, requiring every public elementary and secondary school in the state to "display in a conspicuous place in each classroom of the school a durable poster or framed copy of the Ten Commandments." S.B. 10 § 1.0041(a). Each display must "be at least 16 inches wide and 20 inches tall," with the Commandments appearing in a "size and typeface that is legible to a person with average vision from anywhere in the classroom." *Id.* §§ 1.0041(b)(1)-(2). Children will be unable to avoid the Act's Ten Commandments displays because Texas law requires parents to send their children to school under threat of civil and/or criminal penalties. *See* Tex. Fam. Code § 65.003(b); Tex. Educ. Code § 25.093(a).

The Act specifies the exact version of the Commandments that public schools must use—a Protestant rendition of scripture drawn from Exodus 20 of the King James Bible. ROA.1897. S.B. 10 displays must "include *only* the text of the Ten Commandments" (emphasis added) prescribed by the state, which reads as follows:

The Ten Commandments

I AM the LORD thy God.

Thou shalt have no other gods before me.

Thou shalt not make to thyself any graven images.

Thou shalt not take the Name of the Lord thy God in vain.

Remember the Sabbath day, to keep it holy.

Honor thy father and thy mother, that thy days may be long upon

the land which the Lord thy God giveth thee.

Thou shalt not kill.

Thou shalt not commit adultery.

Thou shalt not steal.

Thou shalt not bear false witness against thy neighbor.

Thou shalt not covet thy neighbor's house.

Thou shalt not covet thy neighbor's wife, nor his manservant,

nor his maidservant, nor his cattle,

nor anything that is thy neighbor's.

S.B. 10 §§ 1.0041(b), (c).

This version of the Ten Commandments is not observed by most adherents of Catholicism and Judaism. ROA.1453. And the theological

aspects of the Ten Commandments generally do not reflect the beliefs of atheists, agnostics, Hindus, Buddhists, and others. ROA.169, ROA.314, ROA.1267, ROA.1453. Indeed, by stating that "I AM the LORD thy God" and mandating that "Thou shalt have no other gods before me," the Ten Commandments conflict with the beliefs of anyone who does not subscribe to Biblical monotheism. ROA.2074.

The Act's sponsors and advocates have made abundantly clear that the state's interest in enacting and implementing S.B. 10 is to impose specific religious beliefs on public-school children, ignoring numerous objections from Texas families and faith leaders from across the religious spectrum. As Lieutenant Governor Dan Patrick, who presides over the Texas Senate, put it: Because of S.B. 10, students "[i]n every classroom in Texas…are going to see the Ten Commandments, and they are going to know about God." ROA.1466. Senator Phil King, S.B. 10's lead sponsor and author, echoed the sentiment, explaining, "we want every kid, [pre-kindergarten] through twelve, every day, in every classroom they sit in to look on the wall and read…those words [] that God says because we want them to understand how important that those statements of God,

those rules of God are that they see them in their classroom every single day of their public education." ROA.1466.

## II.    PROCEDURAL BACKGROUND

On July 2, 2025, sixteen multi-faith and nonreligious families with children in Texas public schools filed a Complaint alleging that S.B. 10 violates the Establishment and Free Exercise Clauses of the First Amendment and moved to preliminarily enjoin its implementation. Plaintiffs represent several faith traditions, and include ordained ministers, pastors, rabbis, and cantors, as well as nonreligious families. ROA.63-127, ROA.154. Plaintiffs submitted declarations detailing the ways in which S.B. 10 would coerce their children into religious observance inconsistent with their families' faith traditions, simultaneously burdening both their children's religious beliefs and their ability to guide their children's spiritual development.

Plaintiffs also submitted the expert report of Dr. Steven Green, which detailed the founding generation's views on religious establishment, and the ills the founders sought to avoid through the religion clauses of the First Amendment. Dr. Green's report also examined whether there is any historical basis for the proposition that

the Ten Commandments are foundational to American law, or any historical practice of displaying or propagating the Ten Commandments in American public schools, concluding none exists. Further, Dr. Green's report described the sectarian nature of the Ten Commandments dictated by S.B. 10 by carefully comparing its text to the variations of the Ten Commandments used by many Catholics and Jews. ROA.315-17.

Defendants, represented by the office of the Attorney General as mandated by the Act, *see* S.B. 10 § 1.0041(g), moved to dismiss, arguing that Plaintiffs lacked standing, that their claims were unripe, and that the complaint failed to state a claim. ROA.899-900. Defendants submitted a report from Dr. Mark Hall, describing the alleged influence the Ten Commandments have exerted over American law, historical displays of the Ten Commandments on government property, and the allegedly nonsectarian character of S.B. 10. ROA.937-72. Dr. Green submitted a rebuttal report addressing Dr. Hall's assertions. ROA.1248-68.

The district court held a two-day hearing including live testimony of the parties' experts, admission of Plaintiffs' testimony by declaration, and oral argument. ROA.1531-1822. The court also admitted both

parties' expert reports, and over sixty exhibits including promotional social media content related to the display of the Ten Commandments in classrooms and intra-district events showing how students move between schools in their districts. ROA.1823-2333.

On August 20, 2025, the district court granted Plaintiffs' request for preliminary injunction and denied Defendants' motion to dismiss. ROA.1480. The court found the testimony of Plaintiffs' expert Dr. Green to be "more persuasive" than that of Defendants' expert in reaching its factual findings regarding history and tradition. ROA.1478. The court relied on Dr. Green's testimony to reject Defendants' claims that there is a tradition of using the Ten Commandments in public-school education and that permanently displaying the Ten Commandments in public-school classrooms fits within that purported tradition. ROA.1471-75.

Determining that the preliminary-injunction factors weighed in Plaintiffs' favor, ROA.1471-78, the court issued an order prohibiting Defendants from displaying the Ten Commandments pursuant to S.B. 10. ROA.1480.

## III.   THE PRESENT APPEAL

Defendants noticed their appeal on August 21, 2025, ROA.1481-82, and sought initial en banc review, ECF No. 18. This Court granted their request on October 28, 2025, and Defendants filed their Appellate Brief ("Defs.Br.") on November 24, ECF No. 94. Notably, Defendants do not challenge the district court's ruling on ripeness and abandon their argument that Plaintiffs lack standing for "fail[ure] to allege any distinct encounter with the displays contemplated by S.B. 10." ROA.914.

## IV.   TEXAS'S POST-*NATHAN* CONDUCT

Notwithstanding the district court's preliminary injunction finding S.B. 10 "plainly unconstitutional," and despite Plaintiffs' counsel sending a letter to nearly every non-party superintendent in Texas informing them of the *Nathan* decision, Texas officials and school districts pressed forward with enforcing and implementing S.B. 10. The Texas Attorney General issued a press release directing all school districts not enjoined by the *Nathan* court to display the Ten Commandments as required by S.B. 10, calling Plaintiffs and the District Court Judge "woke radicals seeking to erase our nation's history." *See* Press Release (Aug. 25, 2025), https://shorturl.at/B9lQQ. On October 1, 2025, the Attorney General

published a legal advisory to all Texas school districts threatening legal action against any district that failed to comply with S.B. 10. *See* Legal Advisory (Sept. 26, 2025), https://shorturl.at/SgyoG. And on November 7, the Attorney General sued Galveston Independent School District and its trustees after the school board voted to delay displaying the Ten Commandments; he has since sued two other districts and their trustees. *See* Press Release (Nov. 18, 2025), https://shorturl.at/VX3Wn.

Meanwhile, many school districts have implemented S.B. 10, prompting dozens more families to sue to enjoin the resultant ongoing violations of their First Amendment rights. One group of plaintiffs obtained a separate preliminary injunction before a different Western District Judge requiring their school districts to remove posted S.B. 10 posters and forbidding them from posting more. *Ringer v. Comal Independent School District*, 2025 WL 3227708 (W.D. Tex. Nov. 18, 2025).[1]

---

[1] Perhaps for strategic reasons, the *Ringer* defendants (represented by the same counsel as Defendants here) waited until the last allowable day to notice their appeal. *Ringer v. Comal Ind. Sch. Dist.*, No. 5:2025-cv-01181-OLG, ECF No. 73 (W.D. Tex. Dec. 17, 2025).

Another group of plaintiffs filed suit on December 2, 2025, and sought class treatment to obtain relief both for their districts and other districts statewide. *See Ashby v. Schertz-Cibolo-Universal City Indep. Sch. Dist.*, No. 5:25-cv-01613-FB (W.D. Tex. 2025). Motions in that case remain pending as of this filing.

## SUMMARY OF THE ARGUMENT

Forty-five years ago, the Supreme Court upheld a pre-enforcement facial challenge to a Kentucky statute materially indistinguishable from S.B. 10, recognizing that posting the Ten Commandments in every public-school classroom would unconstitutionally "induce the schoolchildren to read, meditate upon, perhaps to venerate and obey, the Commandments." *Stone*, 449 U.S. at 42. The same is true here.

Texas children attend public school pursuant to compulsory-education laws. Absent an injunction, Texas will subject those children to unavoidable displays of a state-prescribed, Protestant version of the Ten Commandments *for nearly every hour of every school day of their public education*. Defendants' insistence that S.B. 10 displays are merely "passive" rings hollow. The Ten Commandments are, after all, commandments, and are labeled as commandments pursuant to the Act.

They comprise religious directives like "I am the LORD thy God[;] Thou shalt have no other gods before me." Those religious dictates, backed up by the implicit threat of eternal punishment, will "confront[] elementary school students every day." *See Van Orden v. Perry*, 545 U.S. 677, 691 (2005) (plurality opinion). S.B. 10 is thus irreconcilable with *Stone*, which remains binding. Defendants' insistence that *Stone* no longer controls is untenable under the black-letter rule vesting the Supreme Court alone with the prerogative to overrule its precedents.

*Stone* should end the inquiry. But S.B. 10 is also unconstitutional under broader Establishment Clause jurisprudence prohibiting the government from religiously coercing public-school students and from enacting denominationally preferential laws. Decades after *Stone*, and notwithstanding its abandonment of the *Lemon v. Kurtzman* test, 403 U.S. 602 (1971), the Supreme Court continues to recognize the long line of First Amendment cases finding prayer and scripture at mandatory-attendance public-school events "problematically coercive." *See Kennedy v. Bremerton School District*, 597 U.S. 507, 541-42 (2022) (citing *Lee v. Weisman*, 505 U.S. 577 (1992), and *Santa Fe Indep. Sch. Dist. v. Doe*, 530

U.S. 290 (2000)). Faithfully applying this precedent, the district court concluded that S.B. 10 coerces religious observance.

Defendants eschew the vast body of precedent under which S.B. 10 violates the Establishment Clause by attempting to cobble together a new legal standard from Justice Gorsuch's concurrence in *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), a footnote in *Kennedy*, and dicta from *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). None of those cases supports the standard Defendants invite this Court to apply. The district court correctly assessed S.B. 10's coercive effects in light of the historical record and rightly found no evidence of any tradition consistent with the Act. Defendants do not argue that the court's factual historical findings are clearly erroneous, as would be required for this Court to disregard those findings. Instead, they marshal irrelevant historical practices of displaying the Ten Commandments in other public spaces and using the Ten Commandments in religious schools before the universal adoption of public education by the states. They ignore the Supreme Court's repeated warnings about heightened Establishment Clause vigilance in the public-school context, as well as the fact that religious instruction in American schools conspicuously

waned along with the disestablishment of official state religions and the adoption of secular public education.

Defendants also entirely ignore the district court's ruling that S.B. 10 unlawfully takes sides on matters of religion by favoring Protestant Christianity over other religious traditions including Hinduism, Islam, Buddhism, and other non-Judeo-Christian faiths, as well as Catholicism and Judaism, which observe different versions of the Decalogue. The district court's ruling on that score alone provides a sufficient basis for this Court to affirm the decision below.

So, too, does the district court's ruling that the Act is also unconstitutional under the Free Exercise Clause because it burdens Plaintiffs' religious freedom and usurps parent-Plaintiffs' rights to guide their children's spiritual development. ROA.1477-78. Attempting to rebut this obvious conclusion, Defendants distort the Supreme Court's decision in *Mahmoud v. Taylor*, 606 U.S. 522 (2025), which reinforces the Supreme Court's concern over indoctrination in public schools, and which plainly weighs in Plaintiffs' favor.

Two district court judges have considered S.B. 10 and both found it unconstitutional. ROA.1476-78; *Ringer*, 2025 WL 3227708. Another

district court and a panel of this Court found a similar Louisiana law (also before this Court en banc) unconstitutional. *Roake v. Brumley*, 141 F.4th 614 (5th Cir. 2025); *Roake v. Brumley*, 756 F. Supp. 3d 93 (M.D. La. 2024). And an Arkansas district court struck down yet another Ten-Commandments-in-schools law passed in that state. *Stinson v. Fayetteville Sch. Dist. No. 1*, 2025 WL 2231053 (W.D. Ark. Aug. 4, 2025).[2] The Constitution commands that this Court do the same, and affirm the decision below.

## ARGUMENT

## I.    S.B. 10 IS FACIALLY UNCONSTITUTIONAL.

The district court properly held that S.B. 10 is facially unconstitutional. Based on the Act's extensive minimum requirements, "there is no set of circumstances under which [the implementation of S.B. 10] is constitutional." *Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010). In arguing to the contrary, Defendants advance a number of meritless arguments, while eschewing the actual binding precedent—*Stone v.*

---

[2] *See also Stinson v. Fayetteville Sch. Dist. No. 1 ex rel. Griffin*, 2025 WL 2619159 (W.D. Ark. Sept. 10, 2025) (preliminarily enjoining additional districts); *Stinson v. Fayetteville Sch. Dist. No. 1 ex rel. Griffin*, Civ. No. 25-05127-TLB (W.D. Ark. Nov. 10, 2025) (same).

*Graham*—that controls the outcome of this case. Defendants' attempts to distinguish *Stone* on the facts fail: As Defendants admit, S.B. 10 is practically identical to the statute struck down in *Stone*. ROA.1376. Defendants' remaining Establishment Clause arguments ride roughshod over the Supreme Court's long-established (and recently reaffirmed) sensitivity to schoolchildren's susceptibility to religious coercion. And Defendants entirely ignore S.B. 10's violation of the Establishment Clause's prohibition on denominational preference.

## A. S.B. 10 Violates the Establishment Clause Under *Stone*.

This Court's analysis should begin and end with *Stone*. As the district court noted, S.B. 10 is "plainly unconstitutional under *Stone*." ROA.1468 (cleaned up). Yet Defendants and the amici supporting them argue that *Stone* is nonbinding because (1) it is no longer good law in light of the Supreme Court's reconsideration of the Establishment Clause test set forth in *Lemon*, and (2) it is factually distinguishable on the basis of the Texas legislature's purported secular legislative purpose. Defs.Br.22-23; *see also* ECF No. 122 ("States.Br.") at 12, 19; ECF No. 123 ("Congress.Br.") at 20-21. Both arguments fail.

### 1. *Stone* is good law.

*Stone* was not "abandoned along with *Lemon*." Defs.Br.22. Indeed, the Supreme Court has recognized that *Stone* "almost exclusive[ly] reli[ed] upon two [Supreme Court] school prayer cases." *Van Orden*, 545 U.S. at 690-91 (plurality opinion) (citing *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963), and *Engel v. Vitale*, 370 U.S. 421(1962)). Defendants' suggestion that *Stone* cannot survive *Kennedy*'s repudiation of *Lemon* ignores this fact, along with the bright-line rule vesting the Supreme Court with the exclusive authority to overrule its own precedents.

*Kennedy* did not even mention *Stone*, let alone question the continuing vitality of *Schempp* or *Engel*, on which *Stone* was based. Those cases—like *Stone*—remain binding until and unless the Supreme Court "see[s] fit to reconsider them." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (quotation omitted); *accord Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549-50 (5th Cir. 2020) ("[O]nly the Supreme Court may overrule its precedents even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for [the] earlier holding." (cleaned up)). *Stone* remains controlling, directly

applicable, and dispositive. *See Jusino v. Fed'n of Cath. Teachers, Inc.*, 54 F.4th 95, 102 (2d Cir. 2022) (holding *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979) "remains good law notwithstanding its reliance...on *Lemon*...unless and until the Supreme Court sees fit to overrule [it] directly"), *cert. denied*, 143 S. Ct. 1056 (2023)); *Lefebure v. D'Aquilla*, 15 F.4th 650, 660-61 (5th Cir. 2021) ("[T]he only court that can overturn a Supreme Court precedent is the Supreme Court itself." (citing *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of this Court…appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.")))).

The fact that *Stone* was decided before *United States v. Salerno*, 481 U.S. 739 (1987), is irrelevant. *Salerno* does not cite, much less overrule, *Stone*. Defendants cite no authority indicating that *Salerno* invalidated *any* prior pre-enforcement facial challenges, and none exists. Meanwhile, *Stone* has been favorably cited in several post-*Salerno* cases, including *Van Orden*, where the plurality expressly endorsed *Stone* by distinguishing it from the "far more passive use of" the Ten Commandments there "than was the case in *Stone*, where the text

confronted elementary school students every day." 545 U.S. at 691
(plurality opinion); *see also Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 594
(1989) (citing *Stone*); *McCreary Cnty. v. ACLU*, 545 U.S. 844, 857 (2005)
(same).

### 2. *Stone* controls.

Defendants hedge their erroneous assumption of *Stone*'s
obsolescence by attempting to distinguish it on the facts, but there is no
difference between the two laws that could possibly help Defendants.
Even amici supporting Defendants admit that "factually the Kentucky
statute in *Stone* and Texas' S.B. 10 are similar." ROA.1376. The text,
effects, and religious thrust of S.B. 10 fall within the operative facts in
*Stone*. *See* ROA.1447.

### a. The text and effects of S.B. 10 mirror the statute struck down in *Stone*.

Tellingly, Defendants focus exclusively on legislative purpose in
their unsuccessful attempt to distinguish *Stone*. Defs.Br.34-36. They do
not compare the text or likely impacts of the two laws. It is easy to see
why: To the extent the minimum statutory requirements diverge, S.B. 10
is, if anything, even more egregious.

Unlike in *Stone*, Texas lawmakers themselves selected an official version of the Ten Commandments—one drawn from Protestant scripture. Further, the Texas legislature made sure that students cannot avoid the displays: The Ten Commandments must be posted in a "conspicuous place" and printed in a "size and typeface…legible to a person with average vision from anywhere in the classroom." S.B. 10 §§ 1.0041(a)-(b)(1). And while the statute in *Stone* required displays to be sixteen inches by twenty inches, 449 U.S. at 39 n.1, S.B. 10 allows even larger displays, providing only that they be "*at least*" that size. S.B. 10 § 1.0041(b)(2) (emphasis added). Finally, the statute in *Stone* required a context statement alongside the Ten Commandments, setting forth their purported historical relevance, *see* 449 U.S. at 39 n.1; S.B. 10 does not.

Nor do Defendants attempt to find daylight between the unconstitutional *impacts* of the twin statutes, because there is none. Besides its religious purpose, the Kentucky Ten Commandments statute at issue in *Stone* was unconstitutional because it would "induce the schoolchildren to read, meditate upon, perhaps to venerate and obey, the Commandments." 449 U.S. at 42. The same is true here.

**b. Even a secular aim could not distinguish this case from *Stone*, and in any event, Texas has not articulated any.**

Defendants attempt to distinguish *Stone* by directing the Court to S.B. 10's purportedly "secular legislative purpose" of "highlight[ing] the historic, legal, and moral significance of the Ten Commandments." Defs.Br.19.[3] "[T]he Supreme Court," they argue, "has not suggested that *Stone* would extend to displays of the Ten Commandments that lack a plainly religious, pre-eminent purpose." Defs.Br.22-23 (quoting *Van Orden*, 545 U.S. at 691 n.11) (cleaned up).

This argument mischaracterizes *Van Orden* and *Stone*. Neither suggests that a secular legislative purpose could render constitutional a statute like the one *Stone* invalidated. The dicta Defendants quote from *Van Orden* simply rejected "extend[ing]" "*Stone*'s holding" to lone displays on "capitol grounds." 545 U.S. at 691 (citation omitted). *Van Orden* nowhere implies (much less holds) that ubiquitous classroom Ten Commandments displays would be constitutional if only they were

---

[3] Defendants—not Plaintiffs, and not the district court—raise S.B. 10's legislative purpose to *defend* the Act; Plaintiffs' refutation of their argument should not be interpreted as invoking *Lemon* to argue that S.B. 10's religious purpose alone renders it unconstitutional.

mandated by a statute with a secular purpose. Meanwhile, *Stone* does identify situations in which the Ten Commandments could be referenced in public schools, which have nothing whatsoever to do with legislative purpose. Instead, *Stone* noted, "the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like" if "integrated into the school curriculum." 449 U.S. at 42. Defendants do not even attempt to argue that S.B. 10 contemplates such curricular integration. It clearly does not, nor is it imaginable that the Decalogue could be "integrated" into classes like math, biology, world languages, and many, many others, or that a proper pedagogical use of the Commandments could require ubiquitous, permanent displays.

Regardless, as the district court explained, S.B. 10 *has* a "plainly religious" purpose. *See* ROA.1465-68 ("[W]hile the Act shies away from addressing the religious purpose of S.B. 10, Texas' legislators did not."). S.B. 10's authors, sponsors, and supporters touted it as a means of persuading students into religious belief. Lieutenant Governor Dan Patrick urged the Act's passage by emphasizing that it would make students "see the Ten Commandments" "[i]n every classroom in Texas,"

ensuring they "are going to know about God." ROA.1466 (citation
omitted). S.B. 10's lead Senate sponsor and author echoed that message:

> [W]e want every kid, [pre-kindergarten] through twelve, every day,
> in every classroom they sit in to look on the wall and read…those
> words [] that God says because we want them to understand how
> important that those statements of God, those rules of God are that
> they see them in their classroom every single day of their public
> education.

ROA.1466 (citation omitted). The bill's lead House sponsor stated that
Texans "would be better off" if they "follow God's law," and praised
teachers bringing religion into the classroom for "showing an awful lot of
Christian behavior." ROA.1466-67 (citation omitted). Committee
discussions of S.B. 10 underscore its religious objectives as well. As just
one example, a primary author expressed alarm "that only twenty-five
percent of our kids today in schools have been in a church," calling that
fact "absolutely horrific and something we all need to work on to address,"
including by "engag[ing] in prayer." ROA.1467 (citation omitted).

Taken together, these statements and others in the record show
that S.B. 10's key backers viewed the Act as a corrective measure to what
they consider insufficient religiosity among students—*not*, as Defendants
disingenuously insist, as a way to deliver a history lesson. Accordingly,
the district court distinguished this case from those where courts have

deferred to proffered secular legislative purposes, finding that "[t]hese statements support a commonsense conclusion that a religious objective permeated the government's action." ROA.1468. (cleaned up).

Defendants contest this holding by cherry-picking allegedly secular quotes from the bill's sponsors to demonstrate that "the Texas Legislature had numerous secular purposes in passing S.B. 10." Defs.Br.34-35. Besides being legally irrelevant as discussed above, this argument again distorts the caselaw. Although "the religious motives of some legislators should not deflect [courts] from the secular purposes contained *in the plain text of* [*the statute*]," *Croft v. Governor of Tex.*, 562 F.3d 735, 749 (5th Cir. 2009) (emphasis added), this reasoning does not apply here, where "there is *no* stated legislative purpose of S.B. 10," much less a secular one, ROA.1466 (emphasis added). Defendants cite *Brnovich v. Democratic National Committee*, 594 U.S. 647, 689 (2021), for the proposition that "legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents." Defs.Br.35. But the speakers quoted above *are* the bill's sponsors and authors. Their motivations are self-evident.

Finally, Defendants point to the presumption of legislative good faith to challenge the district court's rejection of S.B. 10's purported secular purpose. Defs.Br.35. However, the presumption of legislative good faith cannot withstand the record evidence of a manifestly religious purpose underpinning S.B. 10, as declared by Texas' own legislators. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 945 F.3d 206, 216 (5th Cir. 2019) (while "circumstantial evidence" cannot overcome the presumption of legislative good faith, "direct evidence" of an improper purpose "in the legislative history" can).

## B. S.B. 10 Violates the Establishment Clause Prohibition on Religious Coercion.

Although *Stone* provides a controlling basis for this Court to affirm the decision below, it does not stand alone. Rather, it reflects longstanding coercion doctrine which has since been reaffirmed in *Kennedy* and other Establishment Clause cases. *Kennedy* called religious coercion "among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." 597 U.S. at 537. The district court correctly held that "S.B. 10 crosses the line from exposure to coercion." ROA.1478. Defendants' extensive argument premised on the assumption that only a highly specific set of state

practices constitute actionable "hallmarks of establishment" is unsupported by Defendants' cited authorities and contradicted by binding precedent.

Defendants misdirect by casting confusion on the allocation of burdens in the district court's analysis, effectively charging plaintiffs raising Establishment Clause claims with the impossible task of finding a literal analog in the eighteenth-century for any modern practice they may challenge. That is not the test. *Town of Greece v. Galloway* simply requires courts to analyze laws and practices challenged under the Establishment Clause "by reference to historical practices and understandings," 572 U.S. 565, 576 (2014) (quoting *Allegheny*, 429 U.S. at 670), to determine whether the challenged law or practice "could coexist with the principles of disestablishment and religious freedom." *Id.* at 566 (cleaned up). Regardless of who carries what burden, S.B. 10 is inconsistent with those principles, unconstitutionally coercive, and unsupported by any historical tradition.

### 1. S.B. 10 is unconstitutionally coercive.

Concerns regarding religious coercion of schoolchildren, which Defendants entirely ignore, continue to animate First Amendment law.

As *Mahmoud* noted, the "'[s]tate exerts great authority and coercive power through' public schools 'because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure.'" *Mahmoud*, 606 U.S. at 554-55 (quoting *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987)); *see also Lee*, 505 U.S. at 592. Accordingly, the Supreme Court has recognized "limits to the display of religious messages or symbols" in public schools, holding up *Stone* "as an example of the fact that we have been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Van Orden*, 545 U.S. at 690-91 (plurality opinion) (quotation omitted); *see also* ROA.1043 (in the school context, "given the impressionability of the young, government must exercise particular care in separating church and state" (quotation omitted)).

This Court has extended the same solicitude to public-school students who are captive to school-sponsored religious messages. *See, e.g.*, *Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001) ("[T]he Supreme Court has repeatedly recognized the right of children and their parents to receive public education that is compliant with the Establishment Clause"); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d

274, 279-80 (5th Cir. 1996) (striking down state law that would authorize prayers at public-school events where "attendance is compulsory" because "students will be a captive audience that cannot leave without being punished by the state or School Board").

Considering these principles, S.B. 10 is plainly unconstitutional. *Kennedy* affirmed that public schools may not religiously coerce students. *See* 597 U.S. at 536-37; *accord Lee*, 505 U.S. at 587 ("It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise."). *Kennedy* explicitly distinguished Coach Kennedy's postgame "private religious exercise" from the "problematically coercive" religious observances challenged in *Lee* and *Santa Fe*, which were officially sponsored by the school and delivered to "captive audiences" at school events which students were either required or expected to attend. 597 U.S. at 537-42. *Lee* and *Santa Fe*, therefore, remain controlling with respect to religious coercion claims asserted by public-school students.

Defendants and their amici seek to confine *Kennedy*'s prohibition against religious coercion to "coercion to attend church and engage in formal religious exercise." Defs.Br.39 (citing *Kennedy*, 597 U.S. at 537 &

31

n.5); *see also* Congress.Br.22. Meanwhile, they insist, Plaintiffs' alleged injury amounts to nothing more than "offense that their children might be exposed to a poster displaying the Ten Commandments on [sic] a classroom" which "is not a cognizable injury under the Establishment Clause." Defs.Br.39. Their position finds no support in *Kennedy*, and is belied by other Supreme Court precedent delineating unconstitutional religious coercion.

Tellingly, when Defendants quote *Kennedy*'s "formal religious exercise" language, they omit that *Kennedy* cited *Lee* in support. *See* 597 U.S. at 537 (quoting *Lee*, 505 U.S. at 589). In *Lee*, the "formal religious exercise" the Court enjoined was religious invocation at the plaintiff's graduation ceremony. If hearing a lone graduation speaker recite a single invocation on a single day crosses the constitutional line barring coercion to engage in a "formal religious exercise," surely the permanent imposition of the Ten Commandments on students in every classroom for hundreds of days per year, pre-K-12, does too.

Similarly, in *Schempp*, the Court recognized that daily scriptural readings—which students were only required to listen to, not recite, and

from which they could opt out without penalty—constituted unconstitutional "religious exercises." 374 U.S. at 224-25.

The cases are equally clear that school-sponsored religious observance is no less coercive merely because it is silent. In *Stone*, the Court held that it is not "significant that the Bible verses involved in this case are merely posted on the wall, rather than read aloud as in *Schempp* and *Engel*." 449 U.S. at 42; *see also Van Orden*, 545 U.S. at 691 (plurality opinion) (distinguishing *Stone* from the "far more passive use of [the Commandments]" there); *Washegesic v. Bloomingdale Pub. Sch.*, 813 F. Supp. 559, 564 (W.D. Mich. 1993) ("[S]usceptibility to coercion from government and peers is [not] limited to situations involving religious exercises."), *aff'd*, 33 F.3d 679 (6th Cir. 1994). Defendants cite no caselaw suggesting that posting scripture throughout schools is less coercive than reading it aloud, or otherwise undermining the district court's holding that "[g]overnment school promoted religious activity is no less unconstitutional merely because it is silent." ROA.1470 (citing *Wallace v. Jaffree*, 472 U.S. 38, 60-61 (1985) (striking down silent-prayer-in-school law); *accord Stinson*, 2025 WL 2231053, at *11 ("[T]he Ten Commandments are not passive because students in public schools are

forced to engage with them and cannot look away."); *Roake*, 756 F. Supp. 3d at 164 (similar). Even the U.S. Congress has recognized that a silent "display" carries the potential "to…coerce." *See Boos v. Barry*, 485 U.S. 312, 316 (1988) (quoting and invalidating D.C. Code § 22-1115, which barred, *inter alia*, "display[ing] any flag, banner, sign, placard, or device…for the purpose of…coercing, threatening, or harassing any foreign official").

Although aurally silent, S.B. 10 displays are plainly coercive. The Ten Commandments are, after all, commandments—rules and instructions to be followed. And they are explicitly *religious*: "I AM the LORD thy God," "Thou shalt have no other gods before me," "Thou shalt not take the Name of the Lord thy God in vain," "Remember the Sabbath day, to keep it holy." S.B. 10 displays will be everywhere. By Defendants' logic, the Constitution places no limits on the dissemination of religious messaging through "silent" posters on classroom walls—a state could, for example, mandate posters in every classroom containing the Christian Lord's Prayer, the Jewish Sh'ma, or the Muslim Shahada. Or, posters could point out the state's perceived disagreements with non-preferred

religions, mock minority faiths through demeaning depictions of their sacred symbols, or offer instructions on how to proselytize nonbelievers.

Students cannot help but notice the lengths to which the state has gone to ensure that they encounter the Act's religious displays. As a result, they will feel pressured to "read, meditate upon, perhaps to venerate and obey, the Commandments." *See Stone*, 449 U.S at 42; *see also City of Elkhart v. Books*, 532 U.S. 1058, 1061 (2001) (Rehnquist, C.J., dissenting from denial of certiorari) ("In *Stone*, the posting effectively induced schoolchildren to meditate upon the Commandments during the school day."). "This pressure, though [it may be] subtle and indirect, can be as real as any overt compulsion." *Lee*, 505 U.S. at 593; *see also Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 851 (7th Cir. 2012) (en banc) ("[R]eligious displays in the classroom tend to promote religious beliefs, and students might feel pressure to adopt them. Such concern was front and center in *Stone*."). In addition to the coercive nature of the displays themselves, the coercive effects of peer pressure, the heightened risk of teacher-led proselytization, and the other isolating, stigmatizing harms alleged in Plaintiffs' uncontested declarations cannot be hand-waved away in light of these precedents. ROA.192-283 (Plaintiffs' declarations).

## 2. Defendants' proposed "hallmarks" test has no basis in law.

Defendants spend a substantial portion of their Brief erecting an incorrect legal standard for evaluating Establishment Clause claims. At every step, Defendants' proposed analytical framework either misrepresents the law, misstates the facts of this case, and/or introduces new legal arguments not raised below, which are now waived for purposes of appeal. The applicable post-*Lemon* Establishment Clause inquiry here simply asks whether the challenged statute is religiously coercive, by reference to historical understandings and traditions. *Kennedy*, 597 U.S. at 535. S.B. 10 is unconstitutionally coercive as explained above and does not align with any historical practice or tradition.

### a. Neither *Kennedy* nor *Shurtleff* purported to constrain the Establishment Clause to six exclusive "hallmarks."

Defendants insist that "[t]here are six identified 'hallmarks'…that the Establishment Clause was adopted to prohibit," consisting exclusively of the list delineated in Justice Gorsuch's concurring opinion in *Shurtleff*. Defs.Br.25. Based upon that assumption, they assert that any Establishment Clause plaintiff *must* "demonstrate that a challenged

practice" finds a "historical analogue" in one of those specific "hallmarks." Defs.Br.25, 28 (citing *Kennedy*, 597 U.S. at 537) (emphasis omitted). By proposing such a narrow and inflexible approach, Defendants throw out the nuance characteristic of Establishment Clause analysis and would have this Court turn the Establishment Clause into the very "straightjacket [sic]" Defendants insist it "is not." Defs.Br.28.

As a panel of this Court noted in *Roake*, "*Kennedy* did not adopt these 'hallmarks' as the exclusive Establishment Clause test and the *Shurtleff* concurrence is non-binding." *Roake*, 141 F.4th at 645-46. Although that panel opinion was vacated by this Court's grant of rehearing en banc, its analysis of *Shurtleff* and *Kennedy* is nevertheless correct. In no way was "[t]he district court [] led astray" by the *Roake* panel's inescapable holding on this point. Defs.Br.28.

*Kennedy* cites the list of hallmarks set forth in the *Shurtleff* concurrence *in a footnote*, does not enumerate them, and refers to the *Shurtleff* concurrence only parenthetically, in passing, as "discussing coercion and *certain other historical hallmarks* of an established religion." 597 U.S. at 537 n.5 (emphasis added). If the Supreme Court intended to lay down a definitive, comprehensive new Establishment

Clause test where the *Lemon* test once stood, it would not do so through a passing parenthetical reference in a footnote. Besides, as discussed above, *Kennedy* revolved around religious coercion, which the Court located "among the foremost hallmarks of religious establishment[]"— nothing in *Kennedy* indicates any intent by the Court to confine actionable religious coercion to six hypothetical ways in which such coercion may be effectuated. 597 U.S. at 537.

The *Shurtleff* concurrence underscores this point. In it, Justice Gorsuch simply identifies "*some* helpful hallmarks [of establishment] that localities and lower courts *can* rely on." *Shurtleff*, 596 U.S. at 285 (Gorsuch, J., concurring in the judgment) (emphasis added); *see* ROA.1050. In arguing to the contrary, Defendants simply ignore the actual language of the cases on which they rely.

Finally, the notion that the *Shurtleff* "hallmarks" are exhaustive and exclusive is belied by *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industrial Review Commission*, 605 U.S. 238 (2025). There, the Court did not cite *Shurtleff* or *Kennedy*, or mention *Shurtleff*'s suggested list of "hallmarks," while it reaffirmed "the Establishment Clause's 'prohibition of denominational preferences.'" *Id.* at 247 (quoting *Larson*

*v. Valente*, 456 U.S. 228, 245 (1982)); *see infra* Section I.C. (discussing S.B. 10's violation of this prohibition). That prohibition barred *any* governmental "differentiat[ion] between religions based on theological lines[,]" 605 U.S. at 241-42, not just "provid[ing] financial support for [an] established church" or using it "to carry out...civil functions" as Defendants' list suggests, Defs.Br.25.

> **b. No authority requires a plaintiff to prove that a challenged practice meets the definition of one of the *Shurtleff* "hallmarks."**

Defendants double down on their doctrinal gambit by cherry-picking language from out-of-circuit caselaw. Neither of the opinions they cite moves the needle. The Third Circuit's ruling in *Hilsenrath v. School District of the Chathams*, 136 F.4th 484 (3d Cir. 2025)—like *Kennedy* and the prior rulings in this case—hinged on its coercion analysis, not a doctrinaire checklist of the *Shurtleff* hallmarks. Unsurprisingly, Defendants avoid *Hilsenrath*'s acknowledgement that "coercion was one of the 'foremost hallmarks of religious establishments' at the founding," *id.* at 492 (quoting *Kennedy*, 597 U.S. at 537), as well as its favorable citation to *Lee* and *Santa Fe*, *id*. They also omit that *Hilsenrath* cited *Stone* in distinguishing the challenged lessons regarding Islam from

classroom Ten Commandments displays, finding that the two Islam lessons—included as part of a year-long World Cultures and Geography class—were not coercive because they "w[ere] 'integrated into the school curriculum' as part of 'an appropriate study of history, civilization,' and 'comparative religion.'" *Id.* at 492-93 (quoting *Stone*, 449 U.S. at 42).

The Fourth Circuit's ruling in *Firewalker-Fields v. Lee*, 58 F.4th 104 (4th Cir. 2023), is entirely inapposite to, much less in conflict with, Plaintiffs' Establishment Clause claims or the district court's decision. It does not cite the *Shurtleff* concurrence at all and does not even reference the "hallmarks" of establishment. Nor does it conduct an Establishment Clause analysis under *Kennedy*, instead remanding the case for further factual development. *Id.* at 111. Granting Plaintiffs' Establishment Clause claim here is *consistent* with the Fourth Circuit's suggestion, *id.* at 122 n.7, that a plaintiff must show that the challenged practice resembles one or more hallmarks of establishment under *Kennedy*. Plaintiffs did so. As they have shown, S.B. 10 will give rise to the "foremost hallmark" of them all: coercion. *See supra* § I.B.1.

Defendants' proposal that *Kennedy* and *Bruen* impose a one-sided burden on Plaintiffs to prove that a challenged practice is "relevantly

similar" to a *particular* practice enumerated among the *Shurtleff* hallmarks is therefore inapposite. Indeed, *Bruen* itself belies Defendants' manipulation of its holding. There, the Court explained that the *government*'s obligation to produce historical evidence justifying the challenged restriction of plaintiffs' Second Amendment rights must "accord[] with how we protect other constitutional rights," including "rights under the Establishment Clause." *Bruen*, 597 U.S. at 24-25. The *Bruen* Court explicitly stated it was "adopt[ing] a similar approach." *Id*. at 25. The language Defendants cite from *Firewalker-Fields* suggesting that the Establishment Clause "burden-of-proof allocation is 'in contrast to those constitutional provisions,' like the Second Amendment," Defs.Br.29, thus misapplies *Bruen*, and in any event does not bind this Court.

Defendants' proposed standard would eviscerate the Establishment Clause's historical role in protecting against "subtle and indirect" forms of religious coercion, which the Supreme Court has recognized "can be as real as any overt compulsion." *Lee*, 505 U.S. at 593. Under Defendants' test, the Establishment Clause would not protect public schoolchildren at all for want of a "historical analogy" because—as Defendants' expert

acknowledges—public education did not exist at the time of the founding. *See* ROA.1844 ("K-12 schools run by governments did not really exist until the 1820s."); ROA.1768 (testifying to the same effect). Since no public schools existed in the founding era, Defendants' standard would immunize practically any practice involving public-school religious indoctrination, under the umbrella of the generic "tradition of religious acknowledgment 'deeply embedded in the history and tradition of this country.'" Defs.Br.30 (quoting *Marsh v. Chambers*, 463 U.S. 783, 786 (1983)). That cannot be the law.

### c. S.B. 10 violates the original intent and meaning of the Establishment Clause.

As Plaintiffs' expert testimony made clear, Plaintiffs *have* shown "a set of facts that would have historically been understood as an establishment of religion." Defs.Br.29. "[T]he fundamental concerns and principles animating the Religion Clauses include that: Government should not coerce or promote religious fealty or any religious belief," or "take a position on any religious doctrine or promote any…denominational belief or practice as favored or preferred." ROA.298; *see generally* ROA.293-99 (providing underlying historical evidence). The district court credited and agreed with Plaintiffs' showing.

ROA.1472-75. Defendants' argument that "[i]t was error for the district court to look to original intent rather than original public meaning," Defs.Br.33, is waived, irrelevant, and incorrect.

*First*, this Court "adheres to the general rule that arguments not raised before the district court are waived and cannot be raised for the first time on appeal." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (arguments not raised before district court are waived on appeal). (quotation omitted). Defendants never once argued that Dr. Green's expert testimony on the founders' intent should be discarded for failing to reflect "original public meaning," and they cannot raise such an argument for the first time now.

*Second*, neither Defendants nor their expert identify any meaningful distinction between the framers' original intent and the original public meaning of the Establishment Clause, much less any that would provide historical support for S.B. 10. Indeed, Dr. Hall's report states plainly that "the Establishment Clause should be interpreted in light of the founders' views," and goes on to spend several pages opining on what those views were. ROA.947-52. So even if original public meaning—to the exclusion of the framers' intent—were the operative test

43

(it is not), Defendants offer nothing to suggest that S.B. 10 would pass constitutional muster by reference thereto.

*Finally*, Defendants' argument ignores the well-settled principle that, "[w]hen interpreting vague constitutional text, the Court typically scrutinizes the stated intentions and understandings of the Framers and Ratifiers of the Constitution." *United States v. Rahimi*, 602 U.S. 680, 719 (2024). Thus, the district court properly looked to the founders' original intent.

### d. S.B. 10 does not fit within any historical tradition.

Ultimately, Defendants' proposed legal standard is irrelevant because Plaintiffs have plainly shown that S.B. 10 is unlawfully coercive and unsupported by any historical tradition of propagating religion in public schools. *See Kennedy*, 597 U.S. at 535-36 ("The line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers." (cleaned up)). The only way Defendants could have overcome Plaintiffs' showing, then, would have been to demonstrate that S.B. 10 could "coexis[t] with the principles of disestablishment and

religious freedom," like the legislative prayer practice upheld in *Town of Greece v. Galloway*, 572 U.S. at 576-78. They cannot.

After receiving extensive expert evidence and live testimony, the district court found that there is "insufficient evidence of a broader tradition of using the Ten Commandments in public education, and there is no tradition of permanently displaying the Ten Commandments in public-school classrooms." ROA.1474. The court credited as "more persuasive" Dr. Green's conclusion that there was no longstanding, widespread use of the Ten Commandments in public education, ROA.1471. The court emphasized that "here,…we are talking about public schools, not the public square" in disfavoring Dr. Hall's reliance on "public displays to justify displaying the Ten Commandments in classrooms" and agreed with Dr. Green's conclusions "concerning the Founding Fathers' understanding of the separation of church and state." ROA.1473, 1475. Indeed, the court underscored that the First Amendment rights of Plaintiffs are "in [their] nature…unalienable." ROA.1473-74.

In any event, the analysis provided by Dr. Hall in his expert report—like the evidence submitted by Defendants below and cited in

their Brief—is incorrect. Both Dr. Hall and Defendants suggest that displaying the Ten Commandments on public property implies a tradition supporting their ubiquitous display in public schools. ROA.1842-44; Defs.Br.30. Such is clearly not the case, as *Van Orden* (among other cases cited herein) makes clear: "the Ten Commandments monument on the Texas State Capitol grounds is a far more passive use of those texts than was the case in *Stone*, where the text confronted elementary school students every day." 545 U.S. at 691 (plurality opinion). Dr. Hall softened his report's untenable conflation between the public square and public schools in his testimony, agreeing those "contexts" are "different, and…should be taken into account." ROA.1663.

Courtroom imagery depicting the Ten Commandments is likewise incomparable. Besides the fact that courts are unlike public schools, the frieze of Moses holding the tablets among the Supreme Court's depiction of eighteen "great lawgivers of history" does not privilege the Commandments, or even present their text in a way that is legible to viewers. Rather, it "is written in Hebrew, and is only partial—most notably, only the text of Commandments VI and IX (the most clearly

secular) appears." *ACLU of Ohio Found., Inc. v. Ashbrook*, 211 F. Supp. 2d 837, 884 n.9 (N.D. Ohio 2002), *aff'd*, 375 F.3d 484 (6th Cir. 2004).

Elsewhere, Dr. Hall conflates *colonial* private educational practices with those in the post-independence public-school era, beginning around 1820. ROA.1846. As indicated in the previous section, both experts agree that "we did not have public schools as we think of them now at the founding period." ROA.1599; *see also* ROA.1768 (Dr. Hall testifying to the same fact). But rather than describing analogous practices to S.B. 10's public-school scriptural displays consistent with disestablishment (there are none), Dr. Hall's testimony continuously refers to colonial-era practices plainly at odds with secular public education. *See, e.g.*, ROA.1665-67, ROA.1671-73. This effort to manufacture continuity by looking to practices the founders disfavored fails under *Town of Greece*. *See* 572 U.S. at 576-78.

So, too, does Defendants' identification of a handful of early textbooks—only some of which included the Ten Commandments and were used in some early public schools. ROA.958. Dr. Green dismantled the idea that these materials were prominent in American public education. ROA.305-11, ROA.1263-64. For example, one of Defendants'

examples, the *New England Primer*, was "used chiefly, if not exclusively, in *religiously* run schools, and, importantly, it fell into disuse during the early decades of the nineteenth century, before the rise of public education." ROA. 309. Dr. Hall conceded that he "cannot speak to" whether the *New England Primer* was "used in public schools or not." ROA.1761. Thus, the *Primer*, which "had the central purpose of inculcating religious fealty along sectarian, Calvinist lines," ROA.308-09, "offer[s] little insight into the history of *public* education and the Ten Commandments." ROA.305.

Defendants' reliance on *McGuffey's Readers* fares no better. Dr. Green's exhaustive textual analysis showed that the *Readers*'s referenced the Ten Commandments "only sporadic[ally]" in earlier editions, that such references were "minimal when compared to the numerous lessons included in each book," and that they "were largely eliminated in later versions of the *Readers*." ROA.310-11. In any event, "reliance on [the *Readers*] tapered [in the early twentieth century] as public schools turned to other available options." ROA.311. By contrast, Dr. Hall testified that he "did not spend a lot of time looking at versions in the *McGuffey's Readers*," and "assume[d] what [Dr. Green reported] is true" because

"Steven Green is a good scholar." ROA.1762. Dr. Hall's report, for its part, cites just two pages from one edition of one *Reader* as "list[ing]" the Commandments. ROA.963.

These materials thus do not reflect an "unambiguous and unbroken history" consistent with S.B. 10's ubiquitous proliferation of the Ten Commandments in public schools. *See Marsh*, 463 U.S. at 792. In sum, the district court correctly held that "there is insufficient evidence of a broad tradition in place at the time of the Founding, and within the history of public education, to justify S.B. 10." ROA.1475.

Defendants' arguments to the contrary would have this Court approve of S.B. 10 based on the mere "'official acknowledgment by all three branches of government of the role of religion in American life from at least 1789,'" which Defendants contend includes prayer and other religious acknowledgments. Defs.Br.1 (quotation omitted). *Schempp*, *Engel*, *Lee*, and other Establishment Clause cases have long forbade officially sponsored prayer in public schools. Defendants' position is thus flatly inconsistent with *Kennedy*, which favorably cited those cases to distinguish their unconstitutional governmental religious coercion from Coach Kennedy's private observance.

### C. S.B. 10 Violates the Establishment Clause Prohibition Against Denominational Preference.

The district court separately held that S.B. 10 violates the Establishment Clause prohibition on "officially prefer[ring] one religious denomination over another" by "impermissibly tak[ing] sides on theological questions and officially favor[ing] Christian denominations over others," ROA.1476-77 (cleaned up). Defendants entirely ignore this ruling, which gives Plaintiffs an independent path to relief. When "a state law establishes a denominational preference, courts must treat the law as suspect and apply strict scrutiny in adjudging its constitutionality." *Cath. Charities*, 605 U.S. at 248 (cleaned up).

Here, the record abundantly shows that the Act adopts and mandates a Protestant version of the Ten Commandments. Testimony submitted by Plaintiffs who observe minority faiths illustrates the Act's denominational nature and the exclusionary effects thereof. *E.g.*, ROA.2074-75 (Hindu Plaintiff attesting S.B. 10's adopted scripture is "at odds with Hindu teachings," including that "there are many manifestations of the Divine," and with "Hindu practices includ[ing] venerating statues or images as physical representations of the Divine," "send[ing] the damaging message that [his children] are outsiders in

their community because they do not…share the religious beliefs preferred by the government").

The district court credited this testimony and Plaintiffs' expert evidence, finding as a factual matter that S.B. 10's rendition of scripture is sectarian (Protestant) and conflicts with Jewish and Catholic articulations of the Decalogue, and with the beliefs of atheists, Hindus, and others. ROA.1453-65. Defendants do not even argue that the district court's finding on this score was clearly erroneous. Nor do they attempt to articulate a compelling state interest or narrow tailoring for S.B. 10's denominational preference, as required to survive strict scrutiny. This Court's denominational-preference analysis can end there.

Even if the Court were to further analyze Plaintiffs' Establishment Clause claims under the *Catholic Charities* denominational-preference standard, it must rule in Plaintiffs' favor. Defendants' expert, Dr. Hall, even testified that S.B. 10 could be considered sectarian insofar as it advances scripture observed by Judeo-Christian faiths but not by other religious traditions, such as Buddhism, Hinduism, or Sikhism, or the nonreligious traditions of atheists and agnostics. ROA.1724. Defendants therefore scarcely dispute that the Act's selected version of the Ten

Commandments is sectarian, except insofar as they attempt to redefine "sectarianism" to exclude non-Biblical faiths. This is too narrow a lens: "[T]he government may not favor one religion over another, or religion over irreligion." *McCreary*, 545 U.S. at 875-76.

Defendants' only counter to the sectarian nature of S.B. 10 is that an "identical" text was upheld on the monument in *Van Orden*, citing dicta from *Van Orden* that that text was arrived at following "consult[ation] with a committee composed of members of several faiths in order to find a nonsectarian text." Defs.Br.11 (quoting 545 U.S. at 701 (Breyer, J., concurring in the judgment)). Justice Breyer's concurrence does not analyze the text nor hold as a matter of fact or law that it *is* "nonsectarian." And, as Dr. Green's rebuttal report demonstrates, the "consultation" process referenced was unsuccessful: "the Jewish representative of the drafting committee…withdrew his support for the [Ten Commandments] projects, and several Jewish organizations voiced opposition to the…monuments and plaques." ROA.1258-59. *See also Roake v. Brumley*, No. 24-30706, ECF No. 345 at 54 & n.10 (Dec. 5, 2025) (Appellees' Brief refuting purported "nonsectarian" argument).

Rather than attempt to rebut Plaintiffs' denominational-preference arguments, which the district court vindicated, Defendants invert the religious-neutrality standard, arguing that the district court's Establishment Clause holding evinces "hostility toward religion" and "disfavor[s] religion and religious expression." Defs.Br.36. Defendants' cited cases concerning governmental restrictions on *private* religious exercise are inapposite. *See* Defs.Br.37. For example, *Rosenberger v. Rector & Visitors of the University of Virginia*, 515 U.S. 819 (1995), concerned governmental restrictions on *students'* private religious speech, not a challenge against state-mandated religious proselytizing like Plaintiffs' claims here. Contrary to Defendants' implication, the Establishment Clause regulates government conduct; it does not impose obligations on public-school students to acquiesce in state-sponsored religious expression. *See, e.g.*, *Epperson v. Arkansas*, 393 U.S. 97, 106 (1968) (reaffirming that "the State may not adopt programs or practices in its public schools or colleges which 'aid or oppose' any religion" (quoting *Schempp*, 374 U.S. at 225)). Prohibiting religious coercion of students *by the government* advances one of the core purposes animating both of the Religion Clauses of the First Amendment. ROA.293-99.

In sum, S.B. 10 plainly runs afoul of "[t]he clearest command of the Establishment Clause" that "one religious denomination cannot be officially preferred over another." *Larson*, 456 U.S. at 244. That command is deeply rooted in our nation's history—a direct result of the founders' desire to avoid both the coercive ends of such preference and the religious and civic divisiveness it engenders. *See id.* (discussing colonial history). Nothing in *Kennedy* abrogated this principle. *See Carson v. Makin*, 596 U.S. 767, 787 (2022) (noting concern for "denominational favoritism" and citing *Larson*, 456 U.S. at 244, one week before *Kennedy* ruling). And the *Catholic Charities* decision issued just this year reaffirms it. 605 U.S. at 248. Defendants' failure to meaningfully contest Plaintiffs' argument on this score supplies an independent ground to affirm the decision below.

## II.    S.B. 10 VIOLATES THE FREE EXERCISE CLAUSE.

Plaintiffs' free-exercise claims provide this Court with another independent ground to uphold the district court's decision below.

The right to free exercise guarantees that individuals and families, not the government, can make their own decisions about what—if any—religious beliefs and traditions to hold and practice. That necessarily includes the right *not* to be pressured into government-sponsored

religious observance that violates one's conscience, as well as the right to exercise one's own religion without being coerced by the government to suppress one's beliefs. *See Mahmoud*, 606 U.S. at 558 (rejecting notion that Free Exercise Clause provides "nothing more than protection against compulsion or coercion to renounce or abandon one's religion"). The Free Exercise Clause protects against governmental burdens on one's sincerely held religious beliefs, including through (1) "indirect coercion or penalties on the free exercise of religion," *Carson*, 596 U.S. at 778 (cleaned up), or (2) usurpation of parents' prerogative "to guide the religious future…of their children," *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). S.B. 10 does both and does not survive the strict scrutiny that is triggered as a result.

Defendants' insistence that *Mahmoud* somehow supports their position is analytically incomprehensible, much less meritorious. And their argument that Plaintiffs' free-exercise claims only entitle Plaintiffs to "opt-out" relief narrower than the district court's injunction is, given the required ubiquitous nature of the displays, impracticable to say the least.

## A. *Mahmoud* underscores Plaintiffs' right to relief under the Free Exercise Clause.

The Supreme Court made clear in *Mahmoud* that "[p]ublic education is a public benefit, and the government cannot condition its availability on [Plaintiffs'] willingness to accept [an unconstitutional] burden on their religious exercise." *See* 606 U.S. at 561 (cleaned up). Accordingly, *Mahmoud* commands lower courts to apply strict scrutiny when an "educational requirement or curriculum" in public schools "'substantially interfer[es] with the religious development' of [a] child or pose[s] 'a very real threat of undermining' the religious beliefs and practices the parent wishes to instill in the child"—regardless of "whether [it] is neutral or generally applicable." *Id.* at 556, 565 (quoting *Yoder*, 406 U.S. at 218).

The Act easily clears this threshold. It orders schools to display the Ten Commandments in every classroom without exception. Children— subject to compulsory attendance laws—will thus be subjected to scripture nearly every hour they are in school, pre-K-12. As discussed above, the displays' unavoidable, constant omnipresence in child-Plaintiffs' public-school experience will coercively "induce [them] to read,

meditate upon, perhaps to venerate and obey, the Commandments."
*Stone*, 449 U.S. at 42.

Defendants have denied that strict scrutiny applies and declined to articulate a compelling state interest in implementing S.B. 10, or explain how the Act is narrowly tailored to advance such an interest. As the district court correctly explained:

> [Even] if the Government schools were to meet their burden of showing a compelling interest, [the Act] would fail the "narrowly tailored" prong. There are ways in which students could be taught any relevant history of the Ten Commandments without the state selecting an official version of scripture, approving it in state law, and then displaying it in every classroom on a permanent basis.

ROA.1478.

Analogizing to *Mahmoud* underscores the merits of Plaintiffs' claims. Indeed, the Act works a far more burdensome intrusion on Plaintiffs' religious rights than the secular materials at issue in *Mahmoud*. *First*, S.B. 10 displays are *patently religious* scripture and directly conflict with parent-Plaintiffs' religious beliefs and teachings to their children about matters of faith. *See Mahmoud*, 606 U.S. at 563. *Second*, *Mahmoud* involved the introduction of just five storybooks, which would be used only periodically, spending the majority of the

school-year on a shelf, out of sight. Here, S.B. 10 displays will adorn the walls of every classroom, pre-K-12, regardless of subject matter, for all to see, every day.

Defendants contort the facts of *Mahmoud* in an attempt to distinguish between the "instruction" in *Mahmoud* and the "mere presence" of posters in this case. Defs.Br.43-44. But this contradicts *Stone*'s foreclosure of such a "silent vs. spoken" distinction in matters of religious indoctrination in schools. *See* 449 U.S. at 42 (finding it was not "significant that the Bible verses involved in this case are merely posted on the wall, rather than read aloud as in *Schempp* and *Engel*"); *supra* at 33-35. The district court paid special attention to the question of "coercion versus exposure," specifically requesting additional argument from the parties on that question. ROA.1698-99, ROA.1771. After carefully examining the question, the court correctly concluded that S.B. 10 "crosses the line from exposure to coercion." ROA.1478.

Defendants' argument that "[e]xtending *Mahmoud* to classroom posters would radically reshape public education" is inapposite. Defs.Br.45. The classroom displays mandated by S.B. 10 are not mere "classroom posters"—they are permanent, ubiquitous state-imposed and

state-selected scripture. Defendants' dismissal of the imminent harms at risk here as mere violations of a "right to avoid learning information about important historical and legal documents," Defs.Br.46, again mischaracterizes the impacts of S.B. 10, *see supra* § I.B.2.b., and ignores the real constitutional injuries at issue.

The Act's burdens on Plaintiffs' sincerely held religious beliefs are amply evidenced by Plaintiffs' unrebutted sworn testimony. Defendants dismiss Plaintiffs' testimony as "speculation about children's behavior," and minimize Plaintiffs' constitutional injuries as "some stigma [that] could result if students voice their views on the Ten Commandments." Defs.Br.44-45. But Plaintiffs know their children, understand their children's experience, including as members of minority-faith or nonreligious communities, and can draw from their experience as parents to articulate how the imposition of the Ten Commandments posters violate their children's (and their) constitutional rights.

The record is replete with examples. Plaintiff Rabbi Mara Nathan gave sworn testimony that her child "is one of only a few Jewish students in the school," to whom "[t]he displays will send the message that this version [of the Ten Commandments] is authoritative, that the classroom

and school facilities more generally are Christian spaces, and that M.N., as a Jewish student who does not adhere to this version of scripture, is unwelcome and an outsider in the school community." ROA.1995-96. Her child "has previously been singled out at school," and S.B. 10 will place M.N. "or other minority-faith students in the position of defending or explaining their non-Christian beliefs and practices…in a way not required of their Christian peers." ROA.1996. Another Jewish Plaintiff similarly testified that "some peers have flippantly made Nazi salutes or…jokes about the Holocaust in school," which behaviors would be exacerbated by the Act's "promoting Christian religious doctrine and conveying that Christians are superior to non-Christians." ROA.2003. A Hindu Plaintiff affirmed that S.B. 10's ubiquitous displays will send "the message—with the apparent endorsement of authority figures, including teachers—that certain aspects of Hindu faith and worship are inherently wrong," echoing "historical instances in which Christian missionaries used proselytization and forced exposure to Christianity to turn Hindu children away from their…faith." ROA.2075.

Christian Plaintiffs, including an ordained minister, also testified as to the Act's burdens on their ability to guide their children's religious

development. ROA.2080-84 (the Act violates the Baptist opposition "against the intrusion of the state into religious matters").

Defendants' position would force Plaintiffs to wait and see how their teachers and peers respond to the imposition of the state's preferred religious doctrine in their schools, but this conflicts with *Mahmoud*'s admonition that, "when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit." 606 U.S. at 559-60.

The district court correctly concluded that (1) "the Act is likely to burden Plaintiffs' exercise of their sincere religious or nonreligious beliefs in substantial ways," and (2) S.B. 10 burdens parents' "fundamental rights...'to guide the religious future...of their children.'" ROA.1477 (quotation omitted).

### B. There is no practicable "opt-out" from S.B. 10's coercive effects.

Defendants hedge their implausible attempt to distinguish *Mahmoud* on the merits by emphasizing that the *relief* in *Mahmoud* was limited to allowing children to opt out of objectionable instruction. In so doing, Defendants denigrate Plaintiffs' requested relief as seeking to

"eliminate[] everything that is objectionable to any of these warring sects or inconsistent with any of their doctrines." Defs.Br.46 (citation omitted).

Through its passage of the Act, the Texas legislature has sought to impose observation of its preferred religious doctrine upon every public-school student in the state. Plaintiffs are simply seeking to vindicate the Supreme Court's instruction that "the government may not favor one religion over another, or religion over irreligion, religious choice being the prerogative of individuals under the Free Exercise Clause." *McCreary Cnty*, 545 U.S. at 875-76. To do so, they are requesting an injunction to prevent their state government from—as S.B. 10's lead author and sponsor publicly boasted—forcing "every kid,…every day, in every classroom they sit in to look on the wall and read…those words [] that God says…to understand how important…those rules of God are." ROA.1466 (citation omitted).

The Act's statutory minimum requirements achieve this stated goal. There is no way for children to opt out of S.B. 10's forced religious observance short of staying home from school, and that is simply not an option given mandatory attendance requirements. *See* Tex. Fam. Code §

65.003(b); Tex. Educ. Code § 25.093(a). As long as they are in school, children will be literally surrounded by scripture.

Nor can the district court's injunction be narrowed. It is necessary to enjoin implementation of the Act district-wide to protect Plaintiffs' free-exercise rights. The record shows that Plaintiffs move between classrooms within their schools, and between schools within their districts. *See* ROA.1178-1240. Limiting relief to "opting out" would not work. For one, Defendants' proposal would require districts to construct S.B.10-free bubbles around minor-child-Plaintiffs, requiring schools to take down and re-hang posters whenever a Plaintiff entered or exited a classroom. Such a "bubble" injunction would be completely unworkable. This and other courts have considered and rejected similar "bubble" suggestions advanced by states (including Texas). *See, e.g.*, *E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021) (suggesting tailoring statewide injunction "to address only the seven plaintiffs in this action, as well as their school districts"); *Ringer*, 2025 WL 3227708, at *7 (holding "it is impracticable, if not impossible, to prevent Plaintiffs from being subjected to unwelcome religious displays without enjoining" implementation of the challenged statute); *Stinson*, 2025 WL 2231053, at

*15 (denying state's demand that "the Court...limit the injunction to Plaintiffs' specific classrooms and libraries"). As these courts have recognized, "restricting the scope of a preliminary injunction to just the individual child-Plaintiffs' classrooms or schools is unlikely to avoid constitutional injury." *Stinson*, 2025 WL 2231053, at *15 n.16. Moreover, an injunction along these lines would put minor-child Plaintiffs at risk of repeated "accidental" encounters with the Act's scriptural displays.

## III.  THERE IS NO SET OF CIRCUMSTANCES UNDER WHICH THE IMPLEMENTATION OF S.B. 10 IS CONSTITUTIONAL.

Defendants argue that Plaintiffs' facial challenge is inappropriate because Plaintiffs have not demonstrated that "posting the Ten Commandments is unconstitutional in every application." Defs.Br.47. (cleaned up). In support, Defendants assert that "[n]o Plaintiff has actually been exposed to any display, and any argument about how those displays will appear—with what, if any, additional materials they might be surrounded by—is speculation." *Id.* Considering the specificity of the Act's minimum requirements, we know exactly "how th[e] displays will appear." Whatever "additional materials they might be surrounded by" is irrelevant.

*Stone*, which facially struck down a nearly identical Kentucky statute, is instructive. Like S.B. 10, nothing in that Kentucky law required that the Ten Commandments be displayed standing alone, or otherwise spoke to surrounding context around the displays. *See Stone*, 449 U.S. at 39 n.1. Nevertheless, the Supreme Court held the statute facially unconstitutional. *Id.* at 42-43. And as the district court held here, "S.B. 10's *minimum requirements* provide sufficient details about how the Ten Commandments must be displayed." ROA.1476 (emphasis added). The mere possibility that a teacher may (but is not required to) display secular documents alongside the commandments is purely speculative, irrelevant, and does not render the statute constitutional under any circumstances. This Court is bound by *Stone*, *see supra* § I.A., and under *Stone*, S.B. 10 is unconstitutional.

Meanwhile, Defendants accuse *Plaintiffs* of "speculat[ing]" about how teachers and other students will react to the displays to further argue that S.B. 10 may only be challenged as-applied. For one, the Act's coercive effects go far beyond the likely reactions of "teachers and other students." *See supra* § I.B.1. As cited by the district court, *Kennedy* affirmed that it is "problematically coercive" for public schools to impose

religious messages on a "captive audience" of students. ROA.1474 (cleaned up). Moreover, the court elaborated that "[c]oercion is rife in such an environment because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure." ROA.1474 (cleaned up). Besides, Plaintiffs' alleged harms are not speculative at all. *See supra* § II.B. "[W]hen a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit." *Mahmoud*, 606 U.S. at 559-60. The imposition of state-mandated scripture on public-school students in Texas will imminently and irreparably harm Plaintiffs' constitutional rights absent an injunction.

## IV. THE DISTRICT COURT PROPERLY EXERCISED ITS JURISDICTION.

Defendants do not seriously contest the district court's ruling that Plaintiffs have standing to pursue both their Establishment and Free Exercise Clause claims, and that their claims are ripe. ROA.1476. Defendants decline to press their previous justiciability challenges now that it is clear (1) that Defendants *will* post S.B. 10 displays absent an injunction, and (2) what those displays will look like.

On appeal, the only standing argument Defendants elaborate is derivative of their merits arguments, and in no way defeats standing.

Defendants now assert that Plaintiffs failed to articulate any cognizable injury because they "do not contend that they or their children will be exposed to one of these [six] hallmarks of religious establishment." Defs.Br.39. Besides the fact that this is not the legal standard under the Establishment Clause, *see supra* § I.B.2., and that Plaintiffs *do* allege that they will face religious coercion, *see supra* § I.B.1., it is well established that "[s]tanding is a threshold issue that we consider before examining the merits." *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) (citation omitted).

Defendants even concede that "the Supreme Court has cautioned against conflating standing and the merits." Defs.Br.38. Yet Defendants proceed to do just that. They argue that, since Plaintiffs' alleged injury is "offense that their children might be exposed to a poster displaying the Ten Commandments on a classroom [sic]," it "does not give rise to standing" because it fails to meet Defendants' fabricated "hallmarks" standard discussed *supra*. Defs.Br.39. This argument confuses standing with the merits and improperly assumes that S.B. 10 displays are permissible under the First Amendment—but that is for this Court to decide. The Court cannot *assume* that Plaintiffs' claims will fail on the

merits to defeat standing; instead, it "must accept as true all material allegations of the complaint and…construe the complaint in favor of the complaining party" when assessing whether the plaintiff has alleged a sufficiently concrete and imminent injury. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2020) (quotation omitted).

Defendants and amici similarly challenge Plaintiffs' standing as relying on so-called "offended-observer standing," which they assert "was adopted to enforce *Lemon*'s view of the Establishment Clause," and therefore "falls along with *Lemon*'s theory of rights." Defs.Br.38-39; Congress.Br.18-20. But Defendants' argument is undermined by the majority opinion in the very case they cite to support their argument— *American Legion v. American Humanist Association*, 588 U.S. 29 (2019). Defs.Br.38. There, despite declining to apply *Lemon*, 588 U.S. at 48-52, and notwithstanding Justice Gorsuch's concurring opinion (which is what Defendants cite), the Court adjudicated the plaintiffs' claims, which they brought because they were "offended by the sight of the memorial on public land." *Id.* at 37. Defendants' "offended-observer standing" argument is also inconsistent with settled law that spiritual offense

resulting from direct, unwelcome contact with, or exposure to, a governmental religious display or practice is a sufficient basis for standing. *See, e.g.*, *Murray v. City of Austin*, 947 F.2d 147, 151-52 (5th Cir. 1991); *Freedom from Religious Found., Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476-77 (3d Cir. 2016) (collecting cases).

In any event, Plaintiffs' claims do not depend on this form of standing because their demonstrated injuries go far beyond mere "offense." Plaintiffs have established, through unrebutted sworn testimony, that the minimum requirements of S.B. 10 will coerce child-Plaintiffs into religious observance and burden parent-Plaintiffs' ability to shape their children's religious development. ROA.1476. Defendants do nothing to undermine Plaintiffs' asserted impending injuries or otherwise cast doubt on the district court's jurisdiction over the constitutional question at issue: whether the Act's minimum requirements violate the First Amendment.

## V.    THE DISTRICT COURT'S PRELIMINARY INJUNCTION AND THE SCOPE THEREOF ARE PROPER.

The district court properly exercised its discretion in issuing a district-wide preliminary injunction barring Defendants from posting S.B. 10 displays in schools under their jurisdiction. *See Harrison v.*

*Young*, 48 F.4th 331, 339 (5th Cir. 2022) (appellate courts review injunctions for "abuse of discretion").

Defendants' assertion that Plaintiffs will not suffer irreparable harm absent an injunction rests on the assumption that Plaintiffs will not prevail on the merits of their claims. But Plaintiffs will likely prevail, *see supra* §§ I & II, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud*, 606 U.S. at 569 (quotation omitted); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024) (same). Conversely, "neither [the state] nor the public has any interest in enforcing a [statute] that violates federal law," and accordingly "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Id.*

S.B. 10 violates Plaintiffs' rights under both the Establishment and Free Exercise Clauses. But even if the Court were to affirm only under the Free Exercise Clause, the injunction should not be narrowed as Defendants suggest. The relief granted by the district court falls squarely within the Supreme Court's conception of "complete relief." *See Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025). To narrow the injunction would

render that relief incomplete for the reasons described above. *See supra*

§ II.B.

## <u>CONCLUSION</u>

For the foregoing reasons, the court should affirm.


Respectfully submitted,


Dated: December 22, 2025          */s/ Jonathan K. Youngwood*

Daniel Mach                          Jonathan K. Youngwood
Arijeet Sensharma                    SIMPSON THACHER & BARTLETT
AMERICAN CIVIL LIBERTIES UNION       LLP
FOUNDATION                           425 Lexington Avenue
915 15th Street, NW, Ste. 600        New York, NY 10017
Washington, DC 20005
                                     Alex J. Luchenitser
Adriana Piñon                        Amy Tai
Thomas Buser-Clancy                  AMERICANS UNITED FOR
Chloe Kempf                          SEPARATION OF CHURCH & STATE
Sarah Corning                        1310 L Street, NW, Ste. 200
AMERICAN CIVIL LIBERTIES UNION       Washington, DC 20005
FOUNDATION OF TEXAS
PO Box 8306
Houston, TX 77288-8306

## CERTIFICATE OF SERVICE

On December 22, 2025, this document was served via CM/ECF on

all registered counsel and transmitted to the Clerk of the Court.

*/s/ Jonathan K. Youngwood*

Jonathan K. Youngwood

## **CERTIFICATE OF COMPLIANCE**

This document complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 12,980 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jonathan K. Youngwood*
Jonathan K. Youngwood